FILED
United States Court of Appeals
Tenth Circuit

March 29, 2010

Elisabeth A. Shumaker
Clerk of Court

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

No. 09-1002

LIONEL FERREL,

Defendant - Appellant.

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
(D. Ct. No. 1:07-CR-00283-REB -1)**

Gregory M. Acton, Acton Law Office, PC, Albuquerque, New Mexico, appearing for
Appellant.

Paul Farley, Assistant United States Attorney (David M. Gaouette, United States
Attorney, with him on the brief), Office of the United States Attorney for the District of
Colorado, Denver, Colorado, appearing for Appellee.

Before **TACHA**, **ANDERSON**, and **BRISCOE**, Circuit Judges.

**TACHA**, Circuit Judge.

Lionel Ferrel was indicted on and pleaded guilty pursuant to a plea agreement to

one count of conspiracy to possess with intent to distribute fifty grams or more of a

substance containing a detectable amount of methamphetamine, and a substance

containing a detectable amount of cocaine, in violation of 21 U.S.C. §§ 846 and 841(a)(1) and (b)(1)(A). He was sentenced to 108 months' imprisonment. On appeal, he challenges the validity of his guilty plea and sentence, arguing that the district court: (1) failed to inform him during the Rule 11 plea colloquy of the drug-quantity element of the offense—namely, that the purpose of the conspiracy was to possess with intent to distribute at least fifty grams of methamphetamine; (2) misinformed him during the Rule 11 plea colloquy of the statutory maximum sentence; and (3) should have submitted to a jury the question of the quantity and purity of the methamphetamine involved in the offense. We have jurisdiction under 21 U.S.C. § 1291 and 18 U.S.C. § 3742(a), and we AFFIRM.

## I. BACKGROUND

In December 2006, Detective Jorge Villegas with the Denver North Metro Task Force began investigating Mr. Ferrel's involvement with drug trafficking. From December 2006 through January 2007, he and other officials directed four controlled purchases of methamphetamine from Mr. Ferrel by a confidential informant ("CI"). During this time, Mr. Ferrel also provided the CI with a small sample representative of methamphetamine being produced by Mr. Ferrel's associate, a man named "Guero," in California. The total amount of methamphetamine Mr. Ferrel provided the CI through these transactions was 110.7 grams.

In February 2007, Mr. Ferrel instructed the CI to fly to California to assist Guero in transporting methamphetamine to Denver, Colorado. Mr. Ferrel told the CI that Guero

2

had two pounds of methamphetamine but did not have a driver's license, so the CI should meet Guero in California and drive his vehicle loaded with the methamphetamine to Denver. The CI flew to California, but Guero insisted on driving. The vehicle was ultimately stopped by the California Highway Patrol, and a subsequent search uncovered 1457 grams of 97.6% pure (or "actual") methamphetamine.

That May, Mr. Ferrel sold 250 grams of cocaine to Detective Villegas.

Two months later, Mr. Ferrel was charged in a two-count indictment with conspiracy to possess with intent to distribute fifty grams or more of a substance containing a detectable amount of methamphetamine and a substance containing a detectable amount of cocaine, in violation of 21 U.S.C. §§ 846 and 841(a)(1) and (b)(1)(A) (Count One), and distribution of a substance containing a detectable amount of cocaine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C) (Count Two).

Mr. Ferrel pleaded guilty to Count One. Using the Drug Equivalency Tables set forth in the 2007 United States Sentencing Guidelines Manual ("Guidelines" or "U.S.S.G."), *see* U.S.S.G. § 2D1.1 cmt. n.10(E), the plea agreement outlined the government's position on sentencing. According to the government, the 110.7 grams of methamphetamine that Mr. Ferrel provided to the CI equated to 221.4 kilograms of marijuana; the 1457 grams of actual methamphetamine found in Guero's vehicle equated to 29,140 kilograms of marijuana; and the 250 grams of cocaine that Mr. Ferrel sold to Detective Villegas equated to 50 kilograms of marijuana. The resultant 29,411.4 kilograms of marijuana equivalent produced a base offense level of 36. Mr. Ferrel

3

received a 2-level decrease under the "safety valve," *see* U.S.S.G. §§ 2D1.1(b)(11), 5C1.2, and a 3-level decrease for acceptance of responsibility, *see id.* § 3E1.1. The total offense level was therefore 31, which, combined with Mr. Ferrel's criminal history category of I, produced an advisory Guidelines sentence of 108–135 months. The government recommended a 108-month sentence.

In the plea agreement, Mr. Ferrel admitted to his conduct involving the 110.7 grams of methamphetamine and the 250 grams of cocaine, but he denied responsibility for the 1457 grams of actual methamphetamine found in Guero's vehicle. Instead, in his objections to the PSR and in other pre-sentencing filings, Mr. Ferrel argued that he believed only two pounds (or approximately 896 grams) of a less-pure methamphetamine mixture would be delivered to him. Under the Guidelines, conduct involving methamphetamine mixture results in a lower sentence than conduct involving actual methamphetamine.[1] Thus, Mr. Ferrel calculated his sentence according to the following marijuana equivalents: the 116.3 grams of methamphetamine[2] equated to 232.6 kilograms of marijuana; the 896 grams of methamphetamine equated to 1792 kilograms of marijuana; and the 250 grams of cocaine equated to 50 kilograms of marijuana. The resultant 2074.6 kilograms of marijuana equivalent produced a base offense level of 32.

[1]Specifically, one gram of methamphetamine is equivalent to two kilograms of marijuana, while the one gram of actual methamphetamine is equivalent to twenty kilograms of marijuana. *See* U.S.S.G. § 2D1.1 cmt. n.10(E).

[2]Although the plea agreement noted that Mr. Ferrel had provided the CI with 110.7 grams of methamphetamine, the parties agreed in the PSR that the amount was 116.3 grams. This difference is not relevant to the issues in this appeal.

After the safety-valve and acceptance-of-responsibility reductions, the total offense level was 27 and the Guidelines range was 70–87 months.

At sentencing, the district court agreed with the government and found by a preponderance of the evidence that Mr. Ferrel was responsible for the 1457 grams of actual methamphetamine as relevant conduct. *See* U.S.S.G. § 1B1.1. Accordingly, the court imposed a 108-month sentence, the lowest sentence within the applicable Guidelines range.

## II.  DISCUSSION

A.    <u>Rule 11 Errors</u>

The district court accepted the parties' plea agreement after holding a Rule 11 hearing. *See* Fed. R. Crim. P. 11. On appeal, Mr. Ferrel argues that the district court failed to comply with Rule 11 in two respects. First, he contends that the court did not inform him of the drug-quantity element of the offense. Specifically, he maintains that the court failed to inform him that the object of the conspiracy with which he was charged was to possess with intent to distribute at least fifty grams of methamphetamine, as opposed to an unspecified amount of the drug. Second, Mr. Ferrel argues that the court misinformed him of the statutory maximum sentence.

1.    *Failure to Inform Mr. Ferrel of the Drug-Quantity Element*

"Rule 11 of the Federal Rules of Criminal Procedure 'is designed to assist the district judge in making the constitutionally required determination that a defendant's plea is truly voluntary.'" *United States v. Gigot*, 147 F.3d 1193, 1197 (10th Cir. 1998)

5

(quoting *McCarthy v. United States*, 394 U.S. 459, 465 (1969)). Under Rule 11, the court must inform the defendant of the nature of the charges to which he is pleading. *See* Rule 11(b)(1)(G). In most cases, this requires the court to recite the elements of the offense. *See Gigot*, 147 F.3d at 1198.

Mr. Ferrel was charged with and pleaded guilty to conspiring to possess with intent to distribute fifty grams or more of a substance containing methamphetamine under 21 U.S.C. §§ 846 and 841(a)(1) and (b)(1)(A).[3] 21 U.S.C. § 846 prohibits conspiring to commit an offense under § 841. 21 U.S.C. § 841(a)(1), in turn, makes it unlawful for any person to possess with intent to distribute a controlled substance. *See* 21 U.S.C. § 841(a); *United States v. Jones*, 235 F.3d 1231, 1235 (10th Cir. 2000). Subsection (b) sets forth the penalties for violations of § 841(a). *See* 21 U.S.C. § 841(b); *Jones*, 235 F.3d at 1235. When no specific amount of the controlled substance is charged, § 841(b)(1)(C) provides for a statutory maximum sentence of twenty years' imprisonment. In contrast, subsections (b)(1)(A) and (B) provide for higher maximum sentences depending on the type and quantity of the substance. In Mr. Ferrel's case, for example, possession of fifty grams or more of methamphetamine carries a maximum sentence of life imprisonment. *See* 21 U.S.C. § 841(b)(1)(A)(viii). Because the type and quantity of drug are facts that expose a defendant to a higher maximum sentence than the twenty-year maximum set forth in § 841(b)(1)(C), we have held that such findings are essential elements of the

---

[3]That count also included conspiracy with intent to distribute a substance containing a detectable amount of cocaine, but Mr. Ferrel's cocaine-related conduct is not at issue in this appeal.

6

substantive offense under § 841(a). *United States v. Montgomery*, 468 F.3d 715, 719 (10th Cir. 2006); *United States v. Cernobyl*, 255 F.3d 1215, 1218 (10th Cir. 2001); *Jones*, 235 F.3d at 1236.

At Mr. Ferrel's Rule 11 plea colloquy, the district court did not explicitly inform him of any of the elements of the charged offense, including that the purpose of the conspiracy was to possess with intent to distribute at least fifty grams of methamphetamine. Instead, the court simply stated that the elements were listed in the plea agreement under the section titled "Elements of the Offense of Conviction." Although the plea agreement included a recitation of the offense as charged in the indictment and the factual basis for the plea, both of which clearly set forth the drug amounts alleged by the government, the elements section did not mention the quantity of methamphetamine involved. Instead, that section focused on the elements of conspiring to possess with intent to distribute methamphetamine and cocaine generally.[4] Thus, the district court did not satisfy its obligation under Rule 11 to inform Mr. Ferrel of the nature

---

[4]The plea agreement listed the following three elements under the heading "Elements of the Offense of Conviction":

> [1] [T]he defendant knowingly entered into an agreement or understanding with at least one other person to commit the crime of possession with intent to distribute methamphetamine and cocaine;
> [2] At some time during the existence of the conspiracy, agreement, or understanding, the defendant knew the purpose(s) of the agreement, and, with that knowledge, then deliberately joined the conspiracy, agreement, or understanding . . .; and,
> [3] At some time during the existence or the life of the conspiracy, agreement, or understanding, one of its alleged members knowingly performed an overt act to further or advance the purpose of the agreement.

of the charges against him.

Mr. Ferrel, however, did not object to the court's error, and as such, we review his claim under the exacting plain-error standard. *See United States v. Vonn*, 535 U.S. 55, 59 (2002); *United States v. Edgar*, 348 F.3d 867, 871 (10th Cir. 2003). "To notice plain error . . . the error must (1) be an actual error that was forfeited; (2) be plain or obvious; and (3) affect substantial rights, in other words, in most cases the error must be prejudicial, i.e., it must have affected the outcome." *Edgar*, 348 F.3d at 871 (quotations omitted). If all three conditions are met, we may then exercise our discretion to notice the error, but only if it "seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.* (quotations omitted).

Mr. Ferrel has not shown that the district court's failure to inform him of the drug-quantity element affected his substantial rights. In the context of a plea agreement, an error affects substantial rights if it is prejudicial—that is, if the defendant can show that he would not have pleaded guilty had the court complied with Rule 11. *See id.* at 872. In this case, nothing in the record indicates that Mr. Ferrel would not have pleaded guilty and would have instead exercised his right to trial had the district court properly informed him of the quantity of drugs with which he was charged.

We have suggested that a Rule 11 error is not prejudicial when the defendant was simply deprived of a mandated procedure as opposed to the substantive material information contemplated by the rule. *See Gigot*, 147 F.3d at 1200. Thus, a defendant who receives the information omitted by the district court from other sources generally

8

cannot demonstrate that he would not have pleaded guilty had the court also so informed him. *Cf. Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005) ("[W]e have never held that the judge must himself explain the elements of each charge to the defendant on the record. Rather, the constitutional prerequisites of a valid plea may be satisfied where the record accurately reflects that the nature of the charge and the elements of the crime were explained to the defendant by his own, competent counsel."). Such is the case here. The fact that Mr. Ferrel's offense involved at least fifty grams of methamphetamine was alleged in the indictment, the same language was repeated in the plea agreement and in Mr. Ferrel's Statement in Advance of Plea of Guilty, and Mr. Ferrel himself acknowledged discussing the elements of the offense with his attorney prior to the Rule 11 hearing.

Nonetheless, Mr. Ferrel contends that he did not recognize the fifty-gram quantity as an actual element of the offense but instead viewed the language referencing fifty grams of methamphetamine in the aforementioned documents as simply descriptive or superfluous. Furthermore, he emphasizes that the plea agreement section titled "Elements of the Offense" did not include quantity as an element. Even so, however, Mr. Ferrel does not demonstrate that his decision to plead guilty would have been different had the court specifically informed him of the quantity element. Indeed, even now on appeal, with full knowledge of his rights under Rule 11, Mr. Ferrel does not unequivocally seek to withdraw his plea so that he may go to trial; rather, he primarily requests resentencing without regard to the statutory minimum and maximum sentences set forth in

9

§ 841(b)(1)(A).[5]  Additionally, Mr. Ferrel consistently and repeatedly admitted prior to

the Rule 11 hearing that his § 841 offense involved at least fifty grams of

methamphetamine, and there is nothing in the record to suggest that he wanted a jury to

determine that issue.[6]  Thus, Mr. Ferrel has not satisfied his burden of showing that the

district court's failure to adequately inform him of the quantity element during his Rule

11 colloquy affected his substantial rights.[7]

      2.      *Misstating the Applicable Statutory Minimum and Maximum Sentence*

Under Rule 11(b)(1)(H)–(I), the district court must inform the defendant of, and

ensure that he understands, the statutory minimum and maximum sentence he faces.  Fed.

R. Crim. P. 11(b)(1)(H)–(I).  A violation of § 841(a)(1) and (b)(1)(A) carries a statutory

minimum of ten years' imprisonment and a statutory maximum of life imprisonment.  *See*

---

[5]  Interestingly, the district court's application of the "safety valve" provision rendered Mr. Ferrel's ultimate sentence below the statutory minimum set forth in § 841(b)(1)(A).  Accordingly, we fail to see how the relief Mr. Ferrel requests would have any impact on his ultimate sentence.

[6]Mr. Ferrel did dispute the quantity and purity of the methamphetamine found in Guero's car, *see infra* at p. 13–14, but that amount is irrelevant to his conviction because he admitted in the plea agreement to delivering more than 110.7 grams of methamphetamine to the CI in prior transactions.  That amount alone was sufficient to satisfy the fifty-gram element under § 841(a)(1) and (b)(1)(A).  Thus, the quantity found in Guero's vehicle was used only for sentencing purposes as relevant conduct, *see* U.S.S.G. § 1B1.1, and had no bearing on Mr. Ferrel's conviction itself.

[7]Although this particular instance of Rule 11 error does not warrant reversal, we are reminded that "careful compliance with rule 11 best serves the fair and efficient administration of criminal justice."  *United States v. Barry*, 895 F.2d 702, 705 (10th Cir. 1990).  Thus, the most effective way to ensure satisfaction of Rule 11(b)(1)(G) is for the district court to recite the elements of the offense on the record during the Rule 11 hearing.

10

21 U.S.C. § 841(b)(1)(A). At the Rule 11 hearing in this case, the district court erroneously informed Mr. Ferrel of the Guidelines sentencing range urged by the government rather than the statutory ten-years-to-life range under § 841(b)(1)(A).

Because Mr. Ferrel did not object to this error or otherwise raise this issue below, we again review for plain error and again conclude that Mr. Ferrel has failed to show that he would not have pleaded guilty had he correctly been informed of the statutory minimum and maximum sentence. First, although the district court did not advise Mr. Ferrel of the statutory minimum and maximum sentence, the record shows that he was advised of the statutory range in both the indictment and the plea agreement. Thus, he was not actually deprived of the substantive material information mandated by Rule 11. Second, the district court did properly inform Mr. Ferrel of the applicable Guidelines range, and his sentence ultimately fell at the bottom of that range. Thus, he cannot argue that the court's error led him to expect a sentence other than the one he received, which might have influenced his decision to plead guilty. Finally, on appeal, Mr. Ferrel makes absolutely no argument that absent the district court's error he would not have pleaded guilty. Instead, he states only in conclusory fashion that the district court's error affected his substantial rights. Accordingly, Mr. Ferrel has not shown that the district court's failure to inform him of the statutory minimum and maximum sentence constituted reversible plain error.

B.    Failure to Submit Drug Quantity and Quality to a Jury

Finally, Mr. Ferrel argues that the district court violated "his right to have the drug

quantity and purity submitted to a jury and to have that element proved beyond a reasonable doubt." Mr. Ferrel did not make this precise objection below; rather, his objections appeared to focus on the use of the methamphetamine found in Guero's vehicle as relevant conduct for sentencing purposes.[8] The contours of Mr. Ferrel's objections and our resultant standard of review, however, need not be definitively resolved, because even if Mr. Ferrel properly raised the issue, we conclude that the district court did not err.

First, to the extent Mr. Ferrel contends that the district court should have permitted him to generally plead guilty to the offense but try the sole issue of drug quantity to a jury, we disagree. A defendant has no right to plead guilty to some elements of an offense but have a jury decide others. If a defendant wants a jury to decide an element, he must go to trial. Second, in the plea agreement, Mr. Ferrel admitted to facts that satisfied

[8]In the plea agreement, the parties stated that "[t]he only fact contested by Lionel Ferrel is the knowledge of the amount and purity of methamphetamine which the informant would bring back from California. Lionel Ferrel contends and reserves the right to argue that he was unaware and did not expect that the confidential informant would return to Colorado with 1457 grams of 97% pure methamphetamine." Mr. Ferrel repeated that objection verbatim in another document executed the same day as the plea agreement. In the same document, he noted that "as mandated by [*United States v. Booker*, 543 U.S. 220 (2005)], the defendant did not admit any fact, nor has any fact been submitted to a jury, and proved beyond a reasonable doubt, that would show that Mr. Ferrel knew or had been informed that the informant would bring the amount or the purity of Methamphetamine from California to Colorado." And at the Rule 11 hearing, Mr. Ferrel's attorney stated, "[W]e have maintained the right to argue the amount of the meth and the purity and the information given by the informant. That those are the things that the court can take into consideration for [relevant] conduct." He also recognized that "the court has the option of sentencing to a lesser degree if in fact the court accepts the amount as being different than the alleged amount, and we stand prepared to show that to the probation, show that to the court."

12

the drug-quantity element; thus, a jury finding on this issue would be superfluous.[9] Third, the indictment specifically alleged the drug-quantity element, which distinguishes Mr. Ferrel's cases from those he cites in which we held that a defendant cannot be convicted and sentenced under § 841(b)(1)(A) or (B) when the indictment references only § 841(b)(1)(C). *See, e.g.*, *Jones*, 235 F.3d at 1236–37; *cf. Cernobyl*, 255 F.3d at 1220–21 (same, but indictment charged a violation of § 841(b)(1)(D)). Finally, Mr. Ferrel's suggestion that only a jury, and not the court, could make relevant-conduct findings regarding the amount and purity of the methamphetamine he reasonably foresaw Guero and the CI transporting to Colorado is untenable. *See United States v. Hall*, 473 F.3d 1295, 1312 (10th Cir. 2007) (post-*Booker*, a district court may find sentencing facts, including drug quantity for purposes of relevant conduct, by a preponderance of the evidence). Therefore, the district court's resolution of the drug quantity issue and its failure to submit that issue to the jury was not error.

## III.  CONCLUSION

For the foregoing reasons, we AFFIRM Mr. Ferrel's conviction and sentence.

---

[9]Mr. Ferrel contends that his admissions in the plea agreement are insufficient because they were "not made pursuant to the protections for guilty pleas in Fed. Crim. P. 11." Mr. Ferrel cites no authority, however, for the proposition that admissions relevant to guilty plea are only effective when made in open court during the Rule 11 colloquy.