FILED
United States Court of Appeals
Tenth Circuit

July 22, 2011

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

JOSE CRUZ-BANEGAS, a/k/a Jelbin
Adonei-Cruz,

    Defendant - Appellant.

No. 10-4207

(D. Utah)
(D.C. No. 2:10-CR-00724-TS-1)

**ORDER AND JUDGMENT**[*]

Before **O'BRIEN**, **McKAY**, and **TYMKOVICH**, Circuit Judges.

Jose Cruz-Banegas, represented by counsel, pled guilty to illegal reentry of a previously removed alien and was sentenced to 33 months imprisonment. During the plea colloquy, the district court did not orally advise him of the rights he would forfeit by pleading guilty but instead referred him to a paragraph in the "plea agreement" listing

---

[*] The parties have waived oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). This case is submitted for decision on the briefs.

This order and judgment is an unpublished decision, not binding precedent. 10th Cir. R. 32.1(A). Citation to unpublished decisions is not prohibited. Fed. R. App. 32.1. It is appropriate as it relates to law of the case, issue preclusion and claim preclusion. Unpublished decisions may also be cited for their persuasive value. 10th Cir. R. 32.1(A). Citation to an order and judgment must be accompanied by an appropriate parenthetical notation – (unpublished). *Id.*

them.[1]  Cruz-Banegas claims the failure to personally advise him of his rights and insure he understood them was plain error requiring reversal to allow him to withdraw his guilty plea.  Because the error did not affect his substantial rights, we affirm.

## I.  BACKGROUND

In October 2003, Cruz-Banegas, a citizen of Honduras, pled guilty to possession of a controlled substance in Colorado state court (Colorado conviction).  He absconded prior to sentencing and was on the lam for five years until his arrest in Utah for selling crack cocaine.  He was subsequently charged in Utah state court with distribution of a controlled substance.  He pled guilty and was sentenced to a suspended sentence of 1 to 15 years imprisonment and 36 months probation.  He was then returned to Colorado where he was sentenced to 90 days in jail and 36 months probation on the Colorado conviction.  On April 16, 2009, he was removed from the United States.  It didn't stick.

About five months later he was arrested in Utah on various drug charges.  As a result of having illegally reentered the country, he was required to serve his state sentence by a Utah court and he was charged in federal court (the instant action) with illegal reentry of a previously removed alien in violation of 8 U.S.C. § 1326.

The parties entered into a fast-track "plea agreement," wherein Cruz-Banegas agreed to plead guilty and waive his right to seek a sentence below the guideline range in exchange for the government agreeing to recommend a two-level reduction in his base

---

[1] The parties' "plea agreement" is contained in the "Statement by Defendant in Advance of Guilty Plea."  (R. Vol. I at 10.)  There is no formal, separate plea agreement.  Nevertheless, because the parties and district court referred to the "Statement by Defendant in Advance of Guilty Plea" as the "plea agreement," we will do the same.

offense level.[2]  Apart from the fast-track agreement, the government also agreed to recommend reductions in his sentence for acceptance of responsibility and for the waiver of his right to an indictment.

At the change of plea hearing, however, Cruz-Banegas informed the court that while he still wanted to plead guilty, he no longer wished to proceed under the fast-track program because he wanted to be able to request a sentence below the guideline range. After the court assured itself that he understood the consequences of that decision (i.e., he would lose the two-level reduction in his base offense level and the court may not accept his arguments for a below guideline sentence), the parties altered their "plea agreement" to reflect that decision.  The court then proceeded with the change of plea hearing.

During the plea colloquy, the court told Cruz-Banegas he had a right to continue to plead not guilty and if so the case would proceed to trial where the jury would determine his guilt.  It informed him that if he proceeded to trial, he would have certain rights. Rather than orally inform him of these rights, however, the court referred him to Paragraph 6 of the plea agreement, which listed his jury trial rights.[3]  When asked

---

[2] "To expedite the handling of large volumes of cases involving persons accused of immigration offenses, certain judicial districts employ fast-track programs.  These programs allow defendants to obtain a downward departure in their offense level under the United States Sentencing Guidelines (USSG) in exchange for pleading guilty and waiving their rights to file certain motions and to appeal."  *See United States v. Martinez-Trujillo*, 468 F.3d 1266, 1267 (10th Cir. 2006).

[3] Paragraph 6 provides:

> I know that I have a right to a trial by jury, and I know that if I stand trial by a jury:

whether he understood the rights listed in Paragraph 6, Cruz-Banegas initially responded: "They would find me guilty anyways because I'm being accused of reentry." (R. Vol. II at 11.) Because the answer was non-responsive, the court re-asked the question. This time Cruz-Banegas affirmatively stated he understood his rights. He also stated he understood that by pleading guilty he would be giving up these rights. After obtaining a factual basis for the plea, ensuring Cruz-Banegas understood the charge against him and the "plea agreement," and informing him of the potential punishment, the court accepted his guilty plea, finding it to be entered knowingly and voluntarily.

The court immediately proceeded to sentencing, as previously agreed to by the parties. The PSR determined the base offense level to be 8. *See* USSG §2L1.2(a).

(a) I have a right to the assistance of counsel at every stage of the proceeding.

(b) I have a right to see and observe the witnesses who testify against me.

(c) My attorney can cross-examine all witnesses who testify against me.

(d) I can call the witnesses I want to call, and I can obtain subpoenas to require the attendance and testimony of those witnesses. If I cannot afford to pay for the appearance of a witness and mileage fees, the government will pay for them.

(e) I cannot be forced to incriminate myself and I do not have to testify at any trial.

(f) If I do not want to testify, the jury will be told that no inference adverse to me may be drawn from my election not to testify.

(g) The government must prove each and every element of the offense charged against me beyond a reasonable doubt.

(h) It requires a unanimous verdict of a jury to convict me.

(i) If I were to be convicted, I could appeal, and if I could not afford to appeal, the government would pay the costs of the appeal, including the services of appointed counsel.

(R. Vol. I at 11-12.)

Because Cruz-Banegas had previously been deported following a drug-trafficking conviction, the base offense level was increased by 12 under USSG §2L1.2(b)(1)(B). After receiving a three-level downward adjustment for acceptance of responsibility and a one-level reduction for waiver of the indictment, the total offense level was 16. Due to his previous state court drug convictions, as well as the fact he committed the instant offense while on state court probation and within two years of being released from prison, Cruz-Banegas' Criminal History Category was IV. With that criminal history and a total offense level of 16, the advisory guideline range was 33 to 41 months imprisonment.[4]

Cruz-Banegas argued for "the least amount of time possible" so he could return to his children in Honduras. (R. Vol. II at 23.) He also argued he had already served time for his illegal reentry via the state court revoking his probation as a result. After considering the § 3553(a) factors, the court determined a 33-month sentence was appropriate. It was especially concerned that Cruz-Banegas had been twice previously deported, had drug charges dating back to 2003, had absconded prior to being sentenced on his Colorado conviction and had no verifiable employment. According to the court, "[i]t appears . . . [Cruz-Banegas] has come to the United States for the sole purpose of dealing in drugs." (R. Vol. II at 26.)

## II. STANDARD OF REVIEW

Cruz-Banegas says the district court erred in failing to personally advise him of

---

[4] Had Cruz-Banegas not opted out of the fast-track program, his total offense level would have been 14 and his guideline range 27 to 33 months. *See* USSG Ch. 5, Pt. A (Sentencing Table) (2009).

rights forfeited by pleading guilty.  He admits he did not object to the allegedly inadequate plea colloquy and therefore our review is for plain error.  *See United States v. Vonn*, 535 U.S. 55, 58-59 (2002).  "Under the rigorous plain-error standard, a defendant has the burden of showing (1) an error, (2) that is plain, which means clear or obvious under current law, and (3) that affects substantial rights.  If he satisfies these criteria, this Court may exercise discretion to correct the error if it seriously affects the fairness, integrity, or public reputation of judicial proceedings."  *United States v. Begaye*, 635 F.3d 456, 470 (10th Cir. 2011) (quotations omitted).  In determining the effect of Rule 11 error, a court may look to the entire record, not just the colloquy between the court and the defendant at the change of plea hearing.  *Vonn*, 535 U.S. at 59.

## III.  DISCUSSION

Rule 11(b)(1) of the Federal Rules of Criminal Procedure states in pertinent part:

Before the court accepts a plea of guilty . . ., the defendant may be placed under oath, and the court must address the defendant personally in open court.  During this address, the court must inform the defendant of, and determine that the defendant understands, the following:

     . . . .

(C) the right to a jury trial;

(D) the right to be represented by counsel--and if necessary have the court appoint counsel--at trial and at every other stage of the proceeding; [and]

(E) the right at trial to confront and cross-examine adverse witnesses, to be protected from compelled self-incrimination, to testify and present evidence, and to compel the attendance of witnesses . . . .

The purpose of Rule 11 is "to assist the district judge in making the constitutionally

- 6 -

required determination that a defendant's plea is truly voluntary." *United States v. Ferrel*, 603 F.3d 758, 762 (10th Cir.) (quotations omitted), *cert. denied*, 131 S. Ct. 481 (2010).

Cruz-Banegas argues the district court failed to explicitly inform him of his right to confront and cross-examine witnesses, to be free from self-incrimination, to testify and present evidence, and to compel witnesses to appear. He contends it was not enough for the court to simply reference Paragraph 6 of the "plea agreement"; rather, Rule 11 requires the court to personally address him in open court. And, by not informing him of these rights, and determining whether he understood them, he says the court violated its duty to ensure a defendant's waiver of rights was knowing and voluntary. Cruz-Banegas conveniently says the error affected his substantial rights as he would not have pled guilty had he understood his rights. He points to his statement in response to the court asking him whether he understood the rights listed in Paragraph 6—"They would find me guilty anyways because I'm being accused of reentry." (R. Vol. II at 11.) His response, he claims, indicates he believed the very nature of the charged crime would result in a guilty verdict. He further contends a careful explanation of his rights was necessary as he does not understand English or the American justice system and his desire to return to his family clouded his judgment, as demonstrated by his "irrational decision to opt out of the fast-track program" in hopes of a reduced sentence. (Appellant's Reply Br. at 4.) Finally, he argues reversal is required because the court's error affected his fundamental constitutional rights, which seriously undermines the fairness, integrity and public

reputation of judicial proceedings.[5]

We need not decide whether the court's reference to Paragraph 6 of the plea agreement satisfied its duty under Rule 11(b)(1) to personally address the defendant in open court of the jury trial rights he would be giving up by pleading guilty. That is because even if it was error and that error was plain (the first and second prongs of the plain error test), we conclude Cruz-Banegas has not shown the error affected his substantial rights (the third prong).[6] *See United States v. Caraway*, 534 F.3d 1290, 1299 (10th Cir. 2008) (stating all four prongs must be established in order to satisfy the plain error standard).

"In the context of a plea agreement, an error affects substantial rights if it is prejudicial--that is, if the defendant can show that he would not have pleaded guilty had the court complied with Rule 11." *Ferrel*, 603 F.3d at 763; *see also United States v. Dominguez Benitez*, 542 U.S. 74, 83 (2004) ("[A] defendant who seeks reversal of his conviction after a guilty plea, on the ground that the district court committed plain error under Rule 11, must show a reasonable probability that, but for the error, he would not

---

[5] Cruz-Banegas' argument concerning fundamental rights relates to the fourth prong of the plain error standard which allows a court to correct plain error which affects substantial rights "if it seriously affects the fairness, integrity, or public reputation of judicial proceedings." *See Begaye*, 635 F.3d at 470. He is not claiming the court's allegedly deficient plea colloquy constituted "structural error" requiring automatic reversal and would be hard-pressed to do so in light of *United States v. Dominguez Benitez*, 542 U.S. 74, 81 n.6 (2004) ("The omission of a single Rule 11 warning without more is not colorably structural.").

[6] Of course, the district court should orally advise a defendant of his jury trial rights "to avoid any possibility of misunderstanding." *United States v. Gomez-Cuevas*, 917 F.2d 1521, 1525 n.3 (10th Cir. 1990).

- 8 -

have entered the plea."). "[A] Rule 11 error is not prejudicial when the defendant was simply deprived of a mandated procedure as opposed to the substantive material information contemplated by the rule. Thus, a defendant who receives the information omitted by the district court from other sources generally cannot demonstrate that he would not have pleaded guilty had the court also so informed him." *Ferrel*, 603 F.3d at 763-64 (citation omitted) (district court's failure to inform defendant during plea colloquy of the drug-quantity element of the offense did not affect his substantial rights when the quantity was stated in the indictment, the plea agreement, and the statement in advance of guilty plea); *see also Dominguez Benitez*, 542 U.S. at 77-78, 85 (concluding court's error in failing to warn defendant that he could not withdraw his plea if the court rejected the government's sentencing recommendations did not satisfy plain error standard because, *inter alia*, the plea agreement contained the omitted warning).

Here, there is no indication in the record that Cruz-Banegas would not have pled guilty had the court personally informed him of his jury trial rights. Paragraph 6 of the "plea agreement" plainly stated he had a right to a jury trial and, if he proceeded to trial, he had the right to the assistance of counsel at every stage of the pleadings, the right to confront and cross-examine witnesses against him, the right to call witnesses and to compel their attendance, the right not to be forced to incriminate himself, the right not to testify, the right to have the government prove each element of the offense beyond a reasonable doubt and the right to a unanimous verdict. He signed the "plea agreement" stating he understood its provisions. He informed the court under oath at the change of plea hearing that he had reviewed the rights listed in Paragraph 6 with his attorney and he

understood them. He also stated he understood he would be giving up these rights by pleading guilty. He nevertheless confirmed it was his wish to plead guilty because "I'm guilty." (R. Vol. II at 12.)

Cruz-Banegas' enigmatic response to whether he understood the rights listed in Paragraph 6 (*i.e.*, that the jury would find him guilty because he was accused of illegal reentry) does not compel, or even fairly suggest, a conclusion that he did not understand those rights. While the statement may indicate a mistaken belief that the nature of the charge alone would render him guilty, an equally plausible interpretation is that it demonstrates his recognition of the strength of the government's case (and the lack of any meaningful defense). Indeed, without any prompting, he admitted guilt several times during the plea colloquy. In any event, because Cruz-Banegas' initial response was unresponsive, the court again asked if he understood the listed rights. He responded affirmatively.

It appears Cruz-Banegas does not understand the English language. But a certified court interpreter assisted him with the "plea agreement" and at the change of plea hearing. Moreover, his two state court convictions belie his late blooming contention that he does not understand the American justice system. And the record shows he was assisted by counsel during these state court proceedings as well as during the instant action. The fact he desired to return to his family and therefore opted out of the fast-track program in hopes of obtaining a shorter sentence does not demonstrate he would not have pled guilty had the court orally informed him of his trial rights. Rather, his desire to now withdraw his guilty plea is obviously due to the fact he did not receive the lenity he

desired.  Buyer's remorse is not grounds for reversal.

**AFFIRMED.**

**Entered by the Court:**

**Terrence L. O'Brien**
United States Circuit Judge
