FILED
United States Court of Appeals
Tenth Circuit

June 23, 2017

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

　　　　Plaintiff - Appellee,

v.

JORGE CARILLO,

　　　　Defendant - Appellant.

No. 15-2200

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
(D.C. NO. 2:13-CR-03670-RB-6)**

---

Gordon Devon M. Fooks, Assistant Federal Public Defender, Albuquerque, New Mexico, for Defendant-Appellant.

Marisa A. Ong, Assistant United States Attorney (Damon P. Martinez, United States Attorney, Dean Tuckman, Assistant United States Attorney, Albuquerque, New Mexico, on the brief), for Plaintiff-Appellee.

---

Before **HARTZ**, **MURPHY**, and **HOLMES**, Circuit Judges.

---

**MURPHY**, Circuit Judge.

---

# I. INTRODUCTION

Jorge Carillo pleaded guilty to, inter alia, conspiring to distribute at least 100 grams of heroin, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B), and 846. On appeal, he asserts the district court's acceptance of his guilty plea is at odds with Fed. R. Crim. P. 11(b)(1)(G)-(I) and 11(b)(3). Exercising jurisdiction pursuant to 28 U.S.C. § 1291, this court **remands** the case to the district court for further proceedings.

# II. FACTUAL BACKGROUND

A grand jury issued an indictment alleging Carillo, inter alia, conspired with others to distribute at least 100 grams of heroin. The indictment provided:

> From on or about June 20, 2013, . . . to on or about October 15, 2013, . . . the defendants, JOVITA BELMONTE-GONZALEZ, . . . CELENA MARQUEZ, ANDY NUÑEZ, KATHYE YOUNG, JEREMY SPARKS, and JORGE CARILLO, unlawfully, knowingly and intentionally . . . conspired . . . with each other and with other persons . . . to commit an offense against the United States . . . , distribution of 100 grams and more of . . . heroin, contrary to 21 U.S.C. §§ 841(a)(1) and (b)(1)(B).

> ### Overt Acts

> In furtherance of the conspiracy . . . , the following overt acts, among others, were committed . . . .

> ### Overt Act One

> On June 20, 2013, Jorge Carillo facilitated Celena Marquez purchasing 50 grams of heroin from Jovita Belmonte-Gonzalez for $1400 in Ciudad Juarez, Chihuahua, Mexico, after which Marquez transported the heroin into the United States.

## Overt Act Two

On September 19, 2013, through September 21, 2013, Celena Marquez . . . arranged to send Kathye Young to Mexico to purchase 100 grams of heroin from Jovita Belmonte-Gonzalez.

## Overt Act Three

On September 21, 2013, Celena Marquez and Jeremy Sparks facilitated Kathye Young purchasing 100 grams of heroin from Jovita Belmonte-Gonzalez in . . . Mexico, and then transporting the heroin into the United States.

## Overt Act Four

On September 26, 2013, Andy Nuñez exchanged text messages with Jovita Belmonte-Gonzales in which he arranged for Celena Marquez to purchase 100 grams of heroin from Jovita Belmonte-Gonzalez in . . . Mexico, the following day.

## Overt Act Five

On September 27, 2013, Celena Marquez sent Kathye Young and another female to . . . Mexico, to purchase 100 grams of heroin from Jovita Belmonte-Gonzalez.

## Overt Act Six

On October 15, 2013, Celena Marquez arranged for Kathye Young to purchase 100 grams of heroin from Jovita Belmonte-Gonzalez in . . . Mexico.

## Overt Act Seven

On October 15, 2013, Andy Nuñez drove Kathye Young to the international border, where Kathye Young crossed into Mexico and purchased 100 grams of heroin from Jovita Belmonte-Gonzalez before transporting the heroin into the United States.

In violation of 21 U.S.C. § 846.

The individuals charged in the superseding indictment were identified in an investigation that resulted in twenty-nine people being charged, in four different indictments, with conspiring to import and distribute Mexican heroin within the United States.

At his initial appearance, *see* Fed. R. Crim. P. 5, Carillo acknowledged he received a copy of the indictment and understood the charges against him. He was correctly advised he faced a mandatory minimum term of imprisonment of five years and a maximum term of imprisonment of forty years on the conspiracy charge. He specifically stated he understood the applicable minimum and maximum penalties. Thereafter, Carillo and his attorney "discussed pleading guilty with and without a plea agreement." After confirming the government would not enter into an agreement enabling Carillo to plead to an offense that did not carry a mandatory minimum, Carillo's lawyer recommended that he plead guilty.

Carillo pleaded guilty to the conspiracy charge without the benefit of a plea agreement. At the change-of-plea hearing, the district court reminded Carillo the drug count charged him with "conspiring with others to distribute more than a hundred grams of heroin." The district court, however, did not otherwise elucidate the nature or specifics of the charge or discuss the elements of conspiracy. Nevertheless, Carillo told the district court he understood the charges against him. In reciting the penalties Carillo faced, the prosecutor mistakenly

stated Carillo was subject to a maximum term of imprisonment of twenty years. The district court did not mention the applicable mandatory minimum term. *Cf.* 21 U.S.C. 841(b)(1)(B)(i) (setting out a minimum term of five years' imprisonment and a maximum term of forty-years' imprisonment for the conspiracy crime charged in the indictment). After confirming he had enough time to consult with his lawyer "about the facts and circumstances of [his] case" and was satisfied with his attorney's advice and representation, the district court asked Carillo the following: "How do you plead to Count One which charges you with conspiring with others to distribute more than a hundred grams of heroin, guilty or not guilty?" Carillo responded that he was guilty.

The district court asked the prosecutor to set out the factual basis for the plea (i.e., what the government would be able to prove should Carillo demand a trial). The prosecutor responded as follows:

> Your Honor, we would show beyond a reasonable doubt that on or about June 20th, 2013, through October 15th of 2013 in Dona Ana County in the District of New Mexico this Defendant conspired with his co-defendants, Jovita Belmonte-Gonzalez, Andy Nunez, Kathye Young, Jeremy Sparks and Celena Marquez, to distribute heroin. Specifically, on June 20th of 2013, he provided money to Marquez who traveled to Juarez, Mexico, and purchased approximately 50 grams of heroin from Jovita Belmonte-Gonzalez on his behalf – on this Defendant's behalf. He intended to distribute the heroin.

Carillo answered in the affirmative when queried by the district court as to whether the prosecutor's factual recitation was true.

The district court accepted Carillo's guilty plea, finding he was aware of the nature of the charges he was facing and that the guilty plea was supported by sufficient facts. Before concluding the hearing, the district court asked counsel if there was anything else that needed to be addressed. Counsel responded in the negative. That is, Carillo did not object to the penalties that were recited by the prosecutor, the factual basis the prosecutor provided, or to the court's finding that sufficient facts supported the guilty plea.

Prior to sentencing, a United States Probation Officer prepared a presentence investigation report ("PSR"). The PSR accurately, and repeatedly, set out the applicable five-year mandatory minimum sentence, as well as the forty-year maximum sentence, to which Carillo was subject. The PSR began by noting Carillo's prosecution grew out of an investigation centered around the distribution of large quantities of heroin by Belmonte-Gonzalez. It described Belmonte-Gonzalez's role at the head of four different conspiracies. Regarding the conspiracy to which Carillo pleaded guilty, the PSR ascribed the following conduct to each individual charged in the indictment:

> 23. Celena Marquez was identified as a Primary Buyer from Belmonte-Gonzalez. Between June 20, 2013, and October 15, 2013, Marquez conspired to possess with intent to distribute heroin with Belmonte-Gonzalez on eight occasions. A total of 166.09 grams of heroin was seized by agents from transactions conducted on June 20, 2013 (56.69 grams), and October 15, 2013 (109.4 grams). Additionally, wiretaps identified Marquez conspired to distribute 765.4 grams of heroin. As a

result, the total amount of heroin attributed to Marquez is 931.49 grams.

24.     Andy Nuñez was identified as a Secondary Buyer from Belmonte-Gonzalez through his sister, Celena Marquez. Between September 26, 2013 and October 15, 2013, on behalf of Marquez, Nuñez conspired to possess with intent to distribute heroin with Belmonte-Gonzalez on three occasions. A total of 109.4 grams of heroin was seized by agents from the transaction conducted on October 15, 2013. Additionally, wiretaps identified Nuñez conspired to distribute 233.87 grams of heroin. As a result, the total amount of heroin attributed to Nuñez is 343.27 grams.

25.     Kathye Young was identified as a courier working at the direction of Marquez. Between September 21, 2013, and October 15, 2013, Young conspired to possess with intent to distribute heroin on five occasions. A total of 109.4 grams of heroin was seized by agents from the transaction conducted on October 15, 2013. Additionally, wiretaps identified Young conspired to distribute 496.09 grams of heroin. As a result, the total amount of heroin attributed to Young is 605.49 grams.

26.     Jeremy Sparks was charged in Information 13CR3670. He was the boyfriend of Marquez, and identified as a courier/driver. The information charges on or about September 21, 2013, Sparks conspired to possess with intent to distribute heroin. However, wiretaps identified Sparks conspired to distribute a total of 170.08 grams of heroin on two separate occasions: August 1, 2013, and September 21, 2013.

27.     Jorge Carillo purchased heroin from Marquez; however, it does not appear he was involved in the distribution of heroin. Albeit, on June 27, 2013, Marquez purchased a Luger, High-Point Model C9 9mm handgun (serial number P1376560) from Carillo. Furthermore, a search of his residence revealed a loaded Remington, Model 870, 12 gauge shotgun.

28. The five co-defendants to Belmonte-Gonzalez, as it relates to Indictment 2:13CR03670 conspired to possess with the intent to distribute a total of 166.09 grams of "seized" heroin, and 765.4 grams of heroin "not seized."

The PSR also included a pictorial representation of the conspiracy:



In calculating his offense level, the PSR afforded Carillo a three-level decrease in his offense level based on the fact Carillo's participation in the conspiracy offense was somewhere between minimal and minor. *See* U.S.S.G. § 3B1.2. Carillo's offense level of 14 and criminal history category of IV

resulted in an advisory guidelines range of twenty-seven to thirty-three months' imprisonment. Nevertheless, because Carillo was subject to a five-year mandatory minimum sentence, the PSR noted his guideline term was sixty months' imprisonment.[1] In discussing the sentencing factors set out in 18 U.S.C. § 3553(a), the PSR recognized that Carillo conspired to "purchase" 56.69 grams of heroin," but concluded he "otherwise was not identified as having distributed heroin within the conspiracy."

Carillo filed an objection to the PSR. He did not dispute he was subject to a five-year mandatory minimum sentence but, instead, acknowledged the applicability of § 841(b)(1)(B)(i). His objections, which were made "mainly for preservation purposes," asserted the applicable mandatory minimum sentence violated separation-of-powers principles and was cruel and unusual punishment in violation of the Eighth Amendment.

At the sentencing hearing, the district court adopted the factual findings set out in the PSR. In so doing, the district court first confirmed Carillo had reviewed the PSR with his attorney. The court rejected Carillo's assertion mandatory minimum sentences are unconstitutional. The district court stated it

---

[1]Carillo also pleaded guilty to two gun charges. The PSR correctly noted that pursuant to the Sentencing Guidelines' grouping rules, the appropriate advisory sentencing range for the gun charges was also sixty months' imprisonment. *See* U.S.S.G. §§ 5G1.1, 5G1.2. The district court imposed sentences of forty-eight months' imprisonment on each of the gun charges. The district court did not explain how it arrived at these sentences and the record does not provide a ready explanation.

had considered the Sentencing Guidelines and the factors set out in § 3553(a) and acknowledged the advisory sentencing range was twenty-seven to thirty-three months' imprisonment. Ultimately, the district court imposed the mandatory minimum sixty-month sentence on the conspiracy count and forty-eight month sentences on two firearms counts, with all three sentences to run concurrently. *See supra* n.1. At no point during the sentencing hearing did Carillo contest the validity of his guilty plea.

### III. ANALYSIS

Carillo asserts on appeal, for the first time, that his guilty plea was not knowingly, intelligently, and voluntarily entered because the plea colloquy did not comply with the dictates of Fed. R. Crim. P. 11(b). In particular, Carillo asserts the district court failed to (1) inform him of the applicable minimum and maximum sentences, in violation of Rules 11(b)(1)(H) and (I); (2) adequately explain the nature of the charge to which he was pleading, in violation of Rule 11(b)(1)(G); and (3) establish a factual basis for the guilty plea, in violation of Rule 11(b)(3).

### A. Standard of Review

This court reviews alleged violations of Rule 11(b) that were not objected to in the district court under the exacting plain error standard. *United States v. Vonn*, 535 U.S. 55, 59 (2002); *United States v. Rollings*, 751 F.3d 1183, 1191 (10th Cir. 2014). To satisfy the plain error standard, an appellant must show

(1) an error; (2) the error is plain or obvious; (3) the error affects the appellant's substantial rights (i.e., the error was prejudicial and affected the outcome of the proceedings); and (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings. *United States v. Ferrel*, 603 F.3d 758, 763 (10th Cir. 2010).

As to unpreserved Rule 11(b)(1) errors, an appellant's substantial rights are affected only if he can "show a reasonable probability that, but for the error, he would not have entered the plea." *United States v. Dominguez Benitez*, 542 U.S. 74, 83 (2004). Thus, to demonstrate his substantial rights were affected by any errors on the part of the district court under Rule 11(b)(1)(G), (H), or (I), Carillo must show that absent the error he would not have pleaded guilty to the conspiracy charge set out in the indictment (i.e., "unlawfully, knowingly and intentionally" conspiring to distribute "100 grams and more of . . . heroin"). *Id.* As to an alleged violation of Rule 11(b)(3), however, Carillo can satisfy the third prong of plain error review by demonstrating the record as a whole fails to provide a sufficient factual basis to support the guilty plea. *United States v. Landeros-Lopez*, 615 F.3d 1260, 1264 n.3 (10th Cir. 2010) ("[T]he *Dominguez Benitez* rule is limited to evaluating 'the effect of [an] omitted warning on a defendant's decision' to enter a guilty plea—that is, an error affecting the knowing and voluntary nature of a defendant's plea." (quoting *Dominguez Benitez*, 542 U.S. at 84)). This is so, according to *Landeros-Lopez*, because

Rule 11(b)(3) errors are distinct from the type of error addressed in *Dominguez Benitez*: A district court must reject a defendant's plea if it lacks a factual basis, even if the plea is knowingly and voluntarily made. *See Libretti v. United States*, 516 U.S. 29, 42 (1995) (whether there is a factual basis for a plea "is a distinct inquiry" from whether a plea was knowingly and voluntarily made). Thus, whether [the defendant] would have plead guilty in spite of any Rule 11(b)(3) error is irrelevant; the issue is whether the district court's alleged error in accepting the plea had a substantial effect on his rights. Accordingly, the *Dominguez Benitez* rule does not apply.

*Id.*[2]

## B. Discussion

### 1. Rule 11(b)(1)(H) & (I)

The district court plainly erred at the change-of-plea hearing in failing to adequately inform Carillo as to "any maximum possible penalty" and "any mandatory minimum penalty." Fed. R. Crim. P. 11(b)(1)(H). It likewise plainly erred in failing to determine whether Carillo understood the applicable mandatory

---

[2]The United States asserts the rule set out in *Landeros-Lopez* is "arguably dicta." This assertion is incorrect. To determine whether the appellant in *Landeros-Lopez* had satisfied the requirements of plain error review, the court found it necessary to set forth the standard for showing an affect on an appellant's substantial rights. *United States v. Landeros-Lopez*, 615 F.3d 1260, 1264 & n.3 (10th Cir. 2010). Having defined the standard, *Landeros-Lopez* then applied it to determine the alleged error did not affect the appellant's substantial rights. *Id.* at 1264. Given this, there is no doubt the standard set out in *Landeros-Lopez* was "essential to the determination of the case in hand." *Thompson v. Weyerhaeuser Co.*, 582 F.3d 1125, 1129-30 (10th Cir. 2009) (quotation omitted) (discussing at length the concept of "dicta"). As was the case in *Thompson*, the "gist" of the Government's argument is *Landeros-Lopez* was wrongly decided. *Id.* at 1130. This panel, however, is bound by the decision in *Landeros-Lopez* absent supervening Supreme Court precedent or en banc review. *Id.*

-12-

minimum and possible maximum penalty. Fed. R. Crim. P. 11(b)(1)(I). Carillo is not entitled to relief on these claims, however, because he cannot show a reasonable probability that absent the district court's errors, he would not have entered a guilty plea. *Dominguez Benitez*, 542 U.S. at 83.

At his initial appearance, Carillo was correctly advised he faced a mandatory minimum penalty of five years' imprisonment and a maximum penalty of forty years' imprisonment. He directly acknowledged he understood the applicable penalties. Carillo's knowledge he was facing a mandatory minimum sentence is further evidenced by the fact that, prior to entering a guilty plea, Carillo's attorney contacted the prosecutor in an unsuccessful effort to get Carillo relief from the mandatory minimum sentence. Likewise, the PSR made it clear Carillo faced a minimum prison term of sixty months. Carillo responded to the PSR by filing an objection. Notably, however, that objection did not argue Carillo was unaware he was subject to a mandatory minimum sentence, but that the mandatory minimum he faced violated the Constitution. Carillo offered no objection at his sentencing hearing to the fact he was facing a mandatory minimum sentence. As this recitation establishes, at no time during the proceedings in district court did Carillo ever even hint at being surprised he was subject to a five-year mandatory minimum sentence.

These facts defeat Carillo's claim. Although the penalties announced at his plea hearing were not correct, this court looks to the entire record to determine

whether a Rule 11 error affected a defendant's substantial rights. *Vonn*, 535 U.S. at 59. Furthermore, "a defendant who receives the information omitted by the district court from other sources generally cannot demonstrate that he would not have pleaded guilty had the court also so informed him." *Ferrel*, 603 F.3d at 764. The record conclusively shows that at several points throughout the proceedings, both before and after his plea colloquy, Carillo was alerted to the fact he was facing a minimum sentence of five years and a maximum sentence of forty years. As a result, any error concerning the penalties he faced that was committed during the course of his plea colloquy did not affect his substantial rights.

## 2. Rule 11(b)(1)(G)

"Before the court accepts a plea of guilty . . . [it] must address the defendant personally in open court. During this address, the court must inform the defendant of, and determine that the defendant understands . . . the nature of each charge to which the defendant is pleading . . . ." Fed. R. Crim P. 11(b)(1)(G). "Rule 11 of the Federal Rules of Criminal Procedure is designed to assist the district judge in making the constitutionally required determination that a defendant's plea is truly voluntary." *Ferrel*, 603 F.3d at 762 (quotations omitted). In most cases, to comply with the dictates of Rule 11(b)(1)(G), a district court must recite the elements of the offense. *Id.*[3] At a minimum, Rule

---

[3]The importance of this rule was emphasized in *United States v. Gigot*, wherein this court stated as follows:

(continued...)

-14-

11(b)(1)(G) requires that a district court ensure the defendant understands the "essential" elements of the offense to which he pleads guilty. *See Bousley v. United States*, 523 U.S. 614, 618-19 (1998). Importantly, the United States has not offered on appeal any reason to deviate from that requirement in this case.[4]

[3](...continued)

      [The substantively identical predecessor version of Rule 11(b)(1)(G)] requires the district court to inform the defendant of and to ensure she understands the nature of the offenses to which she is pleading. While the procedures mandated by Rule 11 are not themselves constitutionally required, the court *is* constitutionally required to determine that a defendant's plea is truly voluntary. Moreover, because a guilty plea is an admission of all the elements of a formal criminal charge, it cannot be truly voluntary unless the defendant possesses an understanding of the law in relation to the facts. In most cases, therefore, some rehearsal of the elements of the offense is necessary.

147 F.3d 1193, 1198 (10th Cir. 1998) (quotations, citations, and alteration omitted).

[4]There is a split of authority as to whether it is necessary for a district court, as a general matter, to discuss the elements of a drug-conspiracy charge to comply with the dictates of Rule 11(b)(1)(G). *Compare United States v. Valdez*, 362 F.3d 903, 910 (6th Cir. 2004) (concluding drug conspiracy charges are "easily understood" crimes requiring a district court to do no more than read the indictment aloud in court and allow a defendant to ask questions to comply with Rule 11(b)(1)(G)), *with United States v. Pineda-Buenaventura*, 622 F.3d 761, 771 (7th Cir. 2010) ("Conspiracy is not a concept immediately understandable to a layperson."). Given *Gigot* and *Ferrel*, it does not appear this panel is free to create a special exception for conspiracy cases to the general rule that to comply with Rule 11(b)(1)(G) a district court must identify the elements of the charged crime on the record. Even if such an exception might be appropriate in some drug conspiracy cases, this is not such a case. The superseding indictment, *see supra* at 1-2, identifies a conspiracy running from on or about June 20, 2013, and continuing to on or about October 15, 2013. Although the list of overt acts set out in the indictment tends to show interdependence between the other alleged

(continued...)

The elements of a § 846 drug conspiracy involving a sentence-enhancing quantity are as follows:

*First*: two or more persons agreed to violate the federal drug laws;

*Second*: the defendant knew the essential objective of the conspiracy;

*Third*: the defendant knowingly and voluntarily involved himself in the conspiracy; and

*Fourth*: there was interdependence among the members of the conspiracy.

*Fifth*: the overall scope of the conspiracy involved at least [name amount] of [name controlled substance].

Pattern Crim. Jury Instr. 10th Cir. 2.87 (2011 ed. updated Jan. 2017). There was no discussion of those elements at Carillo's change-of-plea hearing. Instead, the only discussion of the nature of the charge was the following:

THE COURT: Now, have you seen a copy of the Superseding Indictment in your case and had a chance to read it?

THE DEFENDANT: Yes, your Honor.

THE COURT: All right. So it looks like you are charged in Count One, Count Three and Count Four in this Indictment.

In Count One, you're charged with conspiring with others to possess more than a hundred grams of heroin with—well, actually,

_____

[4](...continued)

conspirators, the only overt act tying Carillo to the conspiracy identifies a single purchase on the first day of the alleged conspiracy. That alleged act was taken in concert with only two of the alleged co-conspirators, Celena Marquez and Jovita Belmonte-Gonzalez. Thus, on its face, the superseding indictment naturally leads one to wonder as to issues of foreseeability and interdependence as they relate to Carillo and the mandatory-minimum triggering quantity set out in the indictment.

-16-

you're charged with, I'm sorry, conspiring with others to distribute more than a hundred grams of heroin.

. . . .

Do you understand those three charges against you?

THE DEFENDANT: Yes, your Honor.

It is clear, therefore, that the district court did not discuss the essential elements of the drug-conspiracy charge. Furthermore, the elements of the charge are not set out in the indictment and Carillo did not enter into a written plea agreement, a document which often lists the elements of the charged crime. In remarkably similar circumstances, this court concluded the plea colloquy did not comply with the dictates of Rule 11(b)(1)(G). *Ferrel*, 603 F.3d at 762-63 (finding a violation of Rule 11(b)(1)(G) where the district court did not inform the defendant of any elements of his drug-distribution conspiracy charge and the quantity element was missing from the document referenced by the district court during the plea colloquy). Following the result in *Ferrel*, we too conclude the district court failed to comply with the dictates of Rule 11(b)(1)(G).

Carillo is not entitled to relief based on the district court's error, however, unless he can show that absent the error he would not have entered the guilty plea. *Id.* at 763. As noted by the United States, "a defendant who receives the information omitted by the district court from other sources generally cannot demonstrate that he would not have pleaded guilty had the court also so informed

him." *Id.* The problem, however, is the United States has not pointed this court to any such alternative source of the information. The superseding indictment, which is quoted verbatim above, does not contain either (1) a recitation of the elements or (2) an indication how those elements bear on the mandatory minimum triggering quantity set out in the indictment. Nor was there was any discussion of the elements of the conspiracy charge during Carillo's initial presentment. Finally, the government has not pointed to anything in the record between the entry of Carillo's guilty plea and his sentencing hearing clarifying for Carillo that merely purchasing a single, albeit admittedly large, quantity of heroin from Jovita Belmonte-Gonzalez via Celena Marquez would, by itself, make him responsible for the additional transactions conducted by Jovita Belmonte-Gonzalez with other conspirators. For that reason, the failure of Carillo to move to withdraw his guilty plea during that time period does not support the inference advanced by the government that Carillo understood the nature of the charges despite any violation of Rule 11(b)(1)(G).

That leaves this court with nothing more than Carillo's confirmation during the change-of-plea hearing that he "had enough time to talk with [his] lawyer about the facts and circumstances of [his] case" prior to the hearing. *See Henderson v. Morgan*, 426 U.S. 637, 647 (1976) (noting that in most cases it is safe to presume defense counsel has explained the nature of the offense to the defendant). *But see Miller v. Champion*, 161 F.3d 1249, 1255-56 (10th Cir. 1998)

(noting there are serious reasons to doubt this presumption applies in the absence of a factual basis for it and refusing to apply it under the particular facts of the case); *Hicks v. Franklin*, 546 F.3d 1279, 1284 (10th Cir. 2008) (citing *Miller* for the following proposition: "We will not apply the presumption that the attorney explained the element to the defendant . . . unless there is some factual basis in the record to support it."). In this case, the district court never asked Carillo whether he had discussed the elements of his drug-conspiracy charge with his attorney. Thus, there is serious reason to doubt the applicability of the presumption.

Ultimately, however, we conclude it is unnecessary to decide whether the "counsel-consultation presumption" is enough, standing alone, to demonstrate the district court's Rule 11(b)(1)(G) error did not have an affect on Carillo's substantial rights. As set out more fully below, this court concludes the record does not establish a factual basis for Carillo's plea and, therefore, Carillo is entitled to appellate relief exclusively on the basis of the district court's failure to comply with Rule 11(b)(3). Importantly, by not resolving whether Carillo is entitled to prevail on his claim of Rule 11(b)(1)(G) error, this court avoids resolving difficult questions not fully briefed by the parties. That is, even if there is no indication in the record Carillo was advised about the elements of the conspiracy charge, the question remains whether that fact alone is sufficient to demonstrate "that, but for the error, he would not have entered the plea."

*Dominguez Benitez*, 542 U.S. at 83. Or whether, instead, Carillo is obligated to affirmatively demonstrate, via the development of an adequate factual record, that his attorney never informed him of the elements of the offense. *Cf.*, *e.g.*, *Miller*, 161 F.3d at 1254-56 (discussing at length a 28 U.S.C. § 2254 habeas claim of ineffective assistance of counsel centered on an alleged failure by the attorney to adequately inform the defendants as to the essential elements of the charged offense). Nor is it necessary to determine whether a requirement to develop such an evidentiary record would render it practically impossible for defendants like Carillo to obtain relief on direct appeal under the plain error standard.

### 3. Rule 11(b)(3)

"Before entering judgment on a guilty plea, the court must determine that there is a factual basis for the plea." Fed. R. Crim. P. 11(b)(3). To determine whether a factual basis exists for the defendant's plea, the district court must compare the conduct admitted or conceded by the defendant with the elements of the charged offense to ensure the admissions are factually sufficient to constitute the charged crime. *United States v. Culbertson*, 670 F.3d 183, 191 (2d Cir. 2012); *United States v. Trejo*, 610 F.3d 308, 313 (5th Cir. 2010); *United States v. Mastrapa*, 509 F.3d 652, 657-58 (4th Cir. 2007). In assessing factual sufficiency under the plain error standard, this court may look beyond those facts admitted by Carillo during the plea colloquy and scan the entire record for facts supporting his conviction. *Vonn*, 535 U.S. at 74; *United States v. Moran*, 452 F.3d 1167, 1171

(10th Cir. 2006) (holding that in such circumstances, the district court "may look to answers provided by counsel for the defense and government, the [PSR], or whatever means is appropriate in a specific case—so long as the factual basis is put on the record" (quotations and alteration omitted)).

A defendant can be held "accountable for that drug quantity which was within the scope of the agreement and reasonably foreseeable to him." *United States v. Dewberry*, 790 F.3d 1022, 1030 (10th Cir. 2015) (quotation omitted); Pattern Crim. Jury Instr. 10th Cir. 2.87 (2011 ed. updated Jan. 2017). Thus, to prove the factual basis for Carillo's conspiracy plea, the record has to show that the 100-gram drug quantity was within the scope of the agreement and reasonably foreseeable to him. *Alleyne v. United States*, 133 S. Ct. 2151, 2161 (2013) (holding that a "fact that increases a sentencing floor . . . forms an essential ingredient of the offense" and, therefore, a defendant cannot be convicted of an aggravated drug offense unless the drug quantity that triggers the mandatory minimum sentence is either proved to a jury or admitted by the defendant).

The record in this case lacks an adequate factual basis for Carillo's guilty plea to a conspiracy involving at least 100 grams of heroin. In particular, the record is devoid of evidence supporting the existence of interdependence and foreseeability as to that quantity. The superseding indictment identifies a conspiracy running from on or about June 20, 2013, and continuing to on or about October 15, 2013. *See supra* at 1-2. Although the list of overt acts set out in the

indictment tends to show interdependence between the other alleged conspirators, the only overt act identifying Carillo (i.e., Overt Act One) ties him to a single, fifty-gram purchase on the first day of the alleged conspiracy. The superseding indictment certainly makes clear that the alleged conspiracy involved much more than 100 grams of heroin, but it simply does not provide any basis for inferring that quantity was foreseeable to Carillo or that his single purchase was an act intended to further the aims of the larger conspiracy. *See United States v. Caldwell*, 589 F.3d 1323, 1329-30 (10th Cir. 2009) (noting that even with regard to drug conspiracies, in which the "the degree of specificity with which the government must prove interdependence among them is lower," this court must nevertheless "scrupulously safeguard each defendant individually, as far as possible, from loss of identity in the mass" (quotation omitted)).[5]

---

[5]The United States, relying on the unpublished disposition in *United States v. Gonzalez*, asserts that a plea of guilty to an indictment containing a quantity assertion provides a factual basis for that quantity assertion. 12 F. App'x 792, 794 (10th Cir. 2001). The discussion in *Gonzalez* identified by the government does not relate to an alleged violation of Fed. R. Crim. P. 11(b)(3). Instead, the discussion relates to an alleged *Apprendi* violation. In discussing that claim of error, *Gonzalez*, states as follows:

> Contrary to defendant's assertion, his sentence of life imprisonment did not violate *Apprendi*. The first count of defendant's superseding indictment charged him with conspiracy with intent to distribute cocaine and methamphetamine in violation of § 841(a)(1) and (b)(1)(A)(ii) and (viii). In a lengthy recitation of the overt acts committed by defendant and his co-conspirators in furtherance of the conspiracy, the indictment alleged defendant directed the distribution of four pounds of methamphetamine "on or

(continued...)

Nor was such evidence presented at the change-of-plea hearing.  As noted *supra*, there is simply no discussion of the elements of the crime charged in the indictment at the hearing.  Moreover, when asked to provide a factual basis for

[5](...continued)
about April 24, 1998."  In addition, the indictment alleged that on or about October 13, 1998, "a person known to the Grand Jury" purchased one half pound of methamphetamine from defendant and a co-conspirator for $4,500; on or about October 14, 1998, "a person known to the Grand Jury possessed eight (8) ounces of methamphetamine which had been obtained from [defendant]"; about November 1998, a co-conspirator "ordered one pound of methamphetamine from [defendant]"; on or about November 8, 1998, "a person known to the Grand Jury" purchased one pound of methamphetamine from two co-conspirators who had transported the drug "from California to Oklahoma for distribution at the direction of [defendant]"; about December 1998, and again about January 1999, a co-conspirator ordered one pound of methamphetamine from defendant which was delivered to another co-conspirator at the direction of defendant; on or about January 22, 1999, "a person known to the Grand Jury met with . . . [defendant] and was solicited by defendant to buy 'multi-kilo quantities of methamphetamine'"; and about February or March 1999, defendant delivered one pound of methamphetamine to a co-conspirator.  Without a plea agreement, defendant pled guilty to this count of the indictment.  Therefore, contrary to defendant's argument on appeal, the drug quantity was alleged with specificity in the superseding indictment, and the amount was proved beyond a reasonable doubt by defendant's guilty plea to the indictment.

12 F. App'x at 794.  As should be clear from this passage, the activities of the defendant in *Gonzalez*, specifically detailed in his indictment, clearly demonstrated a violation of the criminal statute set out in the indictment.  Thus, the situation in *Gonzalez* bears no real relationship to this case.  Here the indictment identifies a conspiracy and sets out specific overt acts showing a violation of the relevant statute by every alleged conspirator with the exception of Carillo.  As to Carillo, the indictment simply notes he purchased fifty grams of heroin from Celena Marquez, who was acting as a go-between to Jovita Belmonte-Gonzalez.

the plea at the hearing, the prosecutor simply recited that Carillo conspired with the individuals set out in the indictment to distribute more than 100 grams of heroin and then referenced the single purchase of heroin set out in Overt Act One of the superseding indictment. *See supra* at 4.

Finally, the information in the PSR does not provide a factual basis for Carillo's guilty plea. The PSR specifically determined that Carillo "purchased heroin from Marquez; however, it does not appear he was involved in the distribution of heroin." It further concluded Carillo, "a convicted felon was in possession of firearms in connection with the instant offense. He additionally conspired to purchase 56.99 grams of heroin. He otherwise was not identified as having distributed heroin within the conspiracy." In his statement accepting responsibility for the crime, Carillo simply stated as follows: "I conspired with others to purchase heroin and I am taking responsibility for conspiring to purchase the heroin." Furthermore, the pictorial representation of the conspiracy set out in the PSR, *see supra* at 8, demonstrates a vertical relationship between Carillo, Marquez, and Belmonte-Gonzalez, but no relationship with the other members of the alleged conspiracy.

The government has not alleged any facts—either in the course of district court proceedings or in its answer brief—showing that Carillo was involved in the heroin distribution conspiracy charged in the superseding indictment. Carillo's admission to one fifty-gram heroin purchase on day one of the conspiracy–with

-24-

no further alleged involvement–was insufficient to support his plea to conspiracy to distribute 100 grams of heroin.

## IV. CONCLUSION

Carillo has satisfied his burden of demonstrating the district court's Rule 11(b)(3) error affected his substantial rights. There is no doubt that failing to correct that error would seriously affect the fairness and integrity of judicial proceedings. *See Ferrel*, 603 F.3d at 763. The matter is, therefore **remanded** to the district court for further proceeding consistent with this opinion. In so doing, we note that neither of the parties discussed the appropriate remedy for a violation of Rule 11 under the particular facts of this case (e.g., simple vacation of the guilty plea and return of the parties to the previously existing status quo, entry of a judgment for a violation of § 841 that is supported by the facts admitted by Carillo in entering his guilty plea, etc.). We leave that matter for the parties and district court to resolve on remand and offer no opinion as to that question.[6]

---

[6]As the parties both recognize, our conclusion that Carillo's guilty plea did not comport with Rule 11 renders moot his challenge to the reasonableness of the sentences imposed on the two gun charges to which Carillo pleaded guilty. This is so because the grouping rules set out in the Guidelines tie the sentences on the gun charges to the sentence on the drug-conspiracy charge. *See* U.S.S.G. § 5G1.1, 5G1.2. The district court must necessarily, therefore, revisit on remand the issue of the appropriate sentences on the firearms convictions.