**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**August 2, 2024**

**Christopher M. Wolpert**
**Clerk of Court**

<u>**PUBLISH**</u>

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

ENRIQUE MARTINEZ-ESPINOZA,

    Defendant - Appellant.

Nos. 23-2139 & 23-2140

_____

**Appeal from the United States District Court**
**for the District of New Mexico**
**(D.C. No. 2:23-CR-00836-KG-1)**

_____

Amanda Skinner, Federal Public Defender, Las Cruces, New Mexico, for Defendant –
Appellant.

Emil J. Kiehne, Assistant United States Attorney (Alexander M.M. Uballez, United
States Attorney, with him on the brief), Albuquerque, New Mexico, for Plaintiff –
Appellee.

_____

Before **McHUGH**, **MURPHY**, and **CARSON**, Circuit Judges.

_____

**MURPHY**, Circuit Judge.

_____

## I. Introduction

In May 2023, Enrique Martinez-Espinoza was discovered illegally reentering

the United States from Mexico. The offense occurred while he was on supervised

release for a prior unauthorized reentry. He pleaded guilty pursuant to a Fed. R. Crim. P. 11(c)(1)(C) agreement, but the district court rejected the bargain because his criminal history disqualified him from receiving the downward departure offered by the proposal. In rejecting the agreement, however, the district court erred by not informing Martinez-Espinoza of his post-plea rejection rights under Fed. R. Crim. P. 11(c)(5). Given that the reentry included the same conduct as his most recent offense, the district court also revoked his supervised release without a separate hearing. On appeal, Martinez-Espinoza challenges the district court's Rule 11(c)(5) error as plain and argues the court erred by not adhering to revocation hearing procedures outlined in Fed. R. Crim. P. 32.1(b). Although the district court's Rule 11(c)(5) error was plain, this court concludes the error did not affect Martinez-Espinoza's substantial rights. Further, the revocation was adequately supported by his admission to violating his supervised release terms. Thus, exercising jurisdiction pursuant to 28 U.S.C. § 1291, this court **affirms** the district court's judgment.

## II.     Background

On May 4, 2023, United States Border Patrol agents found Martinez-Espinoza with a group of fifteen other individuals in Hidalgo County, New Mexico. He admitted to being a Mexican citizen without legal authorization to enter or remain in the United States. Agents confirmed Martinez-Espinoza's identity and determined he was first removed or deported from the United States on June 30, 1992. Since then, he has committed eleven additional reentry-related offenses, not including the instant

2

case. At the time he was detained by Border Control, Martinez-Espinoza was on supervised release for a 2019 illegal reentry conviction.

On June 8, 2023, Martinez-Espinoza was charged with and pleaded guilty to one count of reentry of a removed alien in violation of 8 U.S.C. § 1326(a). A corresponding petition to revoke his supervised release was also filed. Martinez-Espinoza entered into a written plea agreement pursuant to Fed. R. Crim. P. 11(c)(1)(C), which included a two-level downward departure under U.S.S.G. § 5K3.1.[1] The departure, however, would not be triggered unless his criminal history category fell below VI. Based on his lengthy history of recidivism, the probation office's Presentence Investigation Report ("PSR") calculated his criminal history category at VI and recommended the departure not apply.

At a change of plea hearing, the magistrate judge notified Martinez-Espinoza that the district court could reject his agreement. If so, the court instructed that he could withdraw his plea and move to trial; attempt to negotiate a new plea; or, at the risk of receiving a more severe punishment, proceed with a guilty plea. Following the plea process, the parties filed sentencing memoranda. Martinez-Espinoza requested twenty-four months' imprisonment and for the sentence to run concurrently with his supervised release punishment. The government requested a high-end sentence and

---

[1] Upon the government's motion, U.S.S.G. § 5K3.1 allows for downward departures pursuant to "an early disposition program authorized by the Attorney General of the United States and the United States Attorney for the district in which the court resides."

for at least half of the supervised release sentence to be consecutive to the underlying reentry punishment. The district court set a hearing to consider both matters. The hearing proceeded, in relevant part, as follows:

> The Court: All right. Now, sir, you are also before the Court in two matters. The first is 23-cr-836. The second is 23-cr-1016, and that is also a petition to revoke conditions of supervision, conditions that were imposed by Judge Collins, Senior Judge Collins, in the District of Arizona.
>
> As to that matter, [Martinez-Espinoza's Counsel], has Mr. Martinez admitted that violation?
>
> Martinez-Espinoza's Counsel: He has not, Your Honor.
>
> The Court: Okay. Now, similar to the earlier case, the facts alleged in the petition are the same as the facts that Mr. Martinez admitted when he pled guilty to reentry. For that reason, is there a need to go through the colloquy on the petition?
>
> Martinez-Espinoza's Counsel: No, there is not, Your Honor.
>
> The Court: So, can we go straight to sentencing?
>
> Martinez-Espinoza's Counsel: Yes, Your Honor.
>
> The Court: All right. Mr. Martinez-Espinoza, did you understand what I just discussed with [your counsel]?
>
> Martinez-Espinoza: Yes, sir.
>
> The Court: Do you agree with this?
>
> Martinez-Espinoza: Yes, sir.

After addressing revocation, the district court proceeded by confirming the PSR's guidelines calculation. Martinez-Espinoza did not object when the district court concluded his offense level was ten and his criminal history category was VI.

4

The district court noted that this criminal history category would disqualify him from receiving the two-level downward departure offered under § 5K3.1. The hearing continued:

> The Court: Therefore, what I'm inclined to do is reject the plea agreement, if it all is still in effect, finding that there's no benefit to Mr. Martinez with that plea agreement. What's your position on that?
>
> Martinez-Espinoza's Counsel: I think that would be appropriate, Your Honor.
>
> The Court: Okay. Do you agree with that, [government's counsel]?
>
> Government's Counsel: Yes, Your Honor.
>
> The Court: Okay. In doing that, Mr. Martinez, what I have done is I've rejected the plea agreement that you agreed to have, but you receive no benefit from it. Instead, you have waived your right to appeal the final sentence of the Court with that plea agreement. But having rejected it, I'm now giving you that right to appeal the sentence back. So you can do that if you wish to do that. Do you have any questions?
>
> Martinez-Espinoza: No, sir.

After hearing argument from the parties, the district court credited Martinez-Espinoza with admitting to his supervised release violation and sentenced him to forty-one months' imprisonment for both offenses.

## III. Analysis

### a. Standard of Review

Martinez-Espinoza did not raise his Rule 11(c)(5) or Rule 32.1(b) objections with the district court. This court, therefore, reviews both challenges for plain error. *See United States v. Starks*, 34 F.4th 1142, 1156 (10th Cir. 2022). "Under the plain error standard of review, we may exercise our discretion to reverse (1) error; (2) that

5

is plain; (3) that affects substantial rights; and (4) that seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Buonocore*, 416 F.3d 1124, 1129 (10th Cir. 2005). The government concedes the district court plainly erred with regard to its plea rejection, but it asserts the error did not affect Martinez-Espinoza's substantial rights under the third prong of our standard of review. The government does not concede error with regard to Martinez-Espinoza's supervised release revocation.

### b. Rule 11(c)(5)

Fed. R. Crim. P. 11(c)(1)(C) provides a process for negotiated plea bargains in which the government may, inter alia, "agree . . . that a particular provision of the Sentencing Guidelines" applies. As noted in Part II above, the parties entered into such an agreement, but the district court rejected it after determining Martinez-Espinoza's criminal history prevented him from receiving the benefit of the bargain. *See United States v. Hurst*, 94 F.4th 993, 1002 (10th Cir. 2024) (noting district courts' general authority to reject plea agreements). Following a plea rejection, a court must advise the defendant that it is not required to follow the plea agreement and, as a result, the defendant may either withdraw the plea or proceed with a guilty plea at the risk of receiving a higher sentence. Fed. R. Crim. P. 11(c)(5)(B)–(C); *see, e.g.*, *United States v. Kearn*, 90 F.4th 1301, 1307 (10th Cir. 2024). Here, all parties agree the district court plainly erred by not informing Martinez-Espinoza of these choices as outlined in Rule 11(c)(5). *See United States v. Fuentes*, 341 F.3d 1216, 1220 (10th Cir. 2003); *see also United States v. Sandoval-Enrique*, 870 F.3d 1207,

6

1212 n.5 (10th Cir. 2017); *United States v. Rakes*, 510 F.3d 1280, 1283 (10th Cir. 2007).

To reverse under plain error review, however, the error in question must have affected the substantial rights of the defendant. *Buonocore*, 416 F.3d at 1129. To satisfy this standard for errors arising under Rule 11, the defendant must demonstrate "a reasonable probability that, but for the error, he would not have entered the plea." *United States v. Dominguez Benitez*, 542 U.S. 74, 83 (2004). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *United States v. Hill*, 749 F.3d 1250, 1263 (10th Cir. 2014) (quotation omitted).[2] "[T]his court looks to the entire record to determine whether a Rule 11 error affected a defendant's substantial rights." *United States v. Carillo*, 860 F.3d 1293, 1302 (10th Cir. 2017).

Martinez-Espinoza contends the district court's failure to inform him of his rights under Rule 11(c)(5) affected his ability to offer a knowing and voluntary plea. He fails, however, to demonstrate any "causal link" between his decision-making process and the district court's error. *Dominguez Benitez*, 542 U.S. at 85. Rather, he vaguely argues the error deprived him of his choices and asserts, without pointing to any evidence, that the record supports a conclusion he would have altered course if

---

[2] This court has been careful to not overstate this test. "The reasonable-probability standard is not the same as, and should not be confused with, a requirement that a defendant prove by a preponderance of the evidence that but for error things would have been different." *Dominguez Benitez*, 542 U.S. at 83 n.9; *see also United States v. Parson*, 84 F.4th 930, 940–41 (10th Cir. 2023).

not for the error. In fact, he identifies no portion of the record indicating any reason why he might not have entered into the plea.[3] In the absence of such evidence, Martinez-Espinoza's arguments merely "invit[e] the court to engage in speculation and conjecture" and, thus, his contentions "lack[] merit." *United States v. Collins*, 511 F.3d 1276, 1281 (10th Cir. 2008).

Furthermore, "a defendant who receives the information omitted by the district court from other sources generally cannot demonstrate that he would not have pleaded guilty had the court also so informed him." *Carillo*, 860 F.3d at 1302 (quotation omitted). Contrary to Martinez-Espinoza's arguments, a complete review of the record demonstrates he was fully advised of his post-plea rejection options. Despite the district court's failings at his sentencing hearing, the magistrate judge at his change of plea hearing clearly communicated each facet of his rights under

---

[3] In his reply brief, Martinez-Espinoza argues the record shows he could have proceeded to trial using a mistaken identity defense *and* still received the benefit of an acceptance of responsibility reduction. In support of these claims, he asserts two prior arrests under different aliases call into question his identity. These arguments are insufficient for three reasons: first, the two arrests made under different aliases occurred over twenty-five years ago and Martinez-Espinoza has since been arrested for illegal reentry nine additional times under the correct name, including the two relevant arrests in 2019 and 2023. He does not show how these bygone arrests relate to this proceeding. Second, "any defendant who attempt[s] at trial to deny a key factual element of the crime . . . forfeit[s] his claim to an adjustment [for acceptance of responsibility]." *United States v. Aguayo-Gonzalez*, 472 F.3d 809, 812 (10th Cir. 2007) (quotation omitted). Were Martinez-Espinoza to proceed to trial on the factual issue of mistaken identity, he would not be entitled to a reduction for acceptance of responsibility. And third, even if these claims were meritorious, both were made for the first time on appeal in his reply brief. This court generally does not consider such arguments and deems them waived. *United States v. Leffler*, 942 F.3d 1192, 1197 (10th Cir. 2019).

Rule 11(c)(5). Given his awareness of these choices and the complete lack of evidence illustrating a connection between the district court's error and his plea strategy, we conclude Martinez-Espinoza's substantial rights were not affected by the court's failure to comply with Rule 11(c)(5).[4] In turn, this court perceives no reversible plain error in his plea procedure.

### c. Rule 32.1(b)

Fed. R. Crim. P. 32.1(b)(2) requires a district court to hold a supervised release revocation hearing within a reasonable time, unless waived by the defendant.[5] Martinez-Espinoza argues the district court denied him this right by asking him if he was comfortable skipping "the colloquy on the [supervised release revocation]

---

[4] In his reply brief, Martinez-Espinoza states that he knew at the time of his hearing that the average sentence for similarly situated defendants was below his predicted guidelines range. He seems to imply that this knowledge impacted his plea strategy. Similar to his other arguments, however, he fails to articulate how this information informed his decision-making or related to the district court's error. *See Dominguez Benitez*, 542 U.S. at 85. Further, the argument is raised for the first time on appeal in his reply brief and, therefore, is deemed waived. *Leffler*, 942 F.3d at 1197.

[5] Fed. R. Crim. P. 32.1(b)(2) clarifies a person subject to a revocation hearing is entitled to:

> (A) written notice of the alleged violation;
> (B) disclosure of the evidence against the person;
> (C) an opportunity to appear, present evidence, and question any adverse witness unless the court determines that the interest of justice does not require the witness to appear;
> (D) notice of the person's right to retain counsel or to request that counsel be appointed if the person cannot obtain counsel; and
> (E) an opportunity to make a statement and present any information in mitigation.

petition," instead of formally determining his waiver of a hearing. He contends his statements at sentencing did not amount to a waiver and he did not otherwise admit to the supervised release violation.

The revocation of supervised release "is not part of a criminal prosecution and thus the full panoply of rights due a defendant in such a proceeding does not apply." *United States v. Williams*, 106 F.4th 1040, 1045 (10th Cir. 2024) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 480 (1972)). Generally, "[u]nder Fed.R.Crim.P.32.1, the defendant has the implicit right to admit his guilt or to contest the alleged violation of the terms of his supervised release." *United States v. Fay*, 547 F.3d 1231, 1234 (10th Cir. 2008). Nonetheless, "[a] full revocation hearing is not necessary where the defendant admits he has violated the terms of his supervised release." *Id.* Further, there is no requirement "that the court ascertain directly from the Defendant in open court whether he wanted to plead guilty to the allegations of supervised release violations." *Id.* (quotation omitted). Rather, in the absence of an explicit on-the-record admission of guilt, the court may look to the "totality of the attendant circumstances" to conclude if guilt was admitted. *Id.* at 1235.

In *United States v. Fay*, this court considered whether the district court erred by not requiring the defendant to openly admit guilt at his revocation hearing. *Id.* at 1234. There, we held the district court did not err by relying on several pieces of evidence in concluding the defendant had otherwise admitted to his supervised release violation, including: (a) the defendant's sentencing memorandum stating he committed the violation; (b) a prior guilty plea to state charges based on the same

10

conduct; (c) his counsel advising the district court "there was no reason they could not proceed to sentencing, even though the government had not presented any evidence and [the defendant] had not explicitly admitted that he had violated the conditions of his supervised release in open court;" and (d) the defendant's own in-court statements implicating wrongdoing. *Id*. at 1234–35. We determined "[t]he record before us establishes that [the defendant] understood what the government claimed were violations of the conditions of his supervised release" and he "admitted the allegations in the petition." *Id*. at 1235.

This case is similar to *Fay*. Although Martinez-Espinoza did not openly admit guilt to his supervised release violation in court, the totality of available evidence demonstrates he effectively did. His sentencing memorandum expressly asked that the sentence for violating supervised release run concurrently with his reentry sentence, thereby implying guilt in both matters. His posture at the sentencing hearing went beyond a failure to object: he agreed with the district court that a colloquy on the revocation petition was unnecessary since his crime of conviction mirrored his supervised release violation. As was the case in *Fay*, Martinez-Espinoza did so without the government having presented evidence on the issue. He further did not object when the district court explicitly credited him with admitting to the violation prior to announcing his sentence. Finally, he clearly apologized for reentering in a personal statement during sentencing and said he would not return to the United States. The record, therefore, demonstrates Martinez-Espinoza was fully aware of the government's claims supporting revocation. In light of this weighty

11

evidence implicating Martinez-Espinoza's admission of guilt, we conclude he admitted a violation of supervised release and no hearing under Rule 32.1(b) was required.[6] That is, the district court did not err, let alone plainly err, in determining Martinez-Espinoza implicitly admitted to violating the terms of his supervised release.

## IV. Conclusion

The judgment of the United States District Court for the District of New Mexico is hereby **AFFIRMED**.

---

[6] Because we conclude Martinez-Espinoza admitted to his supervised release violation, it is unnecessary to determine if he effectively waived his revocation hearing right at sentencing. *See Fay*, 547 F.3d at 1234–35.