# United States Court of Appeals
### For the Eighth Circuit

_____

No. 22-2005
_____

United States of America

*Plaintiff - Appellee*

v.

D.B.

*Defendant - Appellant*
_____

Appeal from United States District Court
for the District of South Dakota - Western
_____

Submitted: October 20, 2022
Filed: March 6, 2023
_____

Before KELLY, WOLLMAN, and KOBES, Circuit Judges.
_____

KELLY, Circuit Judge.

D.B., a juvenile and an enrolled member of the Oglala Sioux Tribe, pleaded guilty to one count of first-degree burglary pursuant to a plea agreement. The district court[1] sentenced him to 12 months of official detention followed by a three-year

_____

[1]The Honorable Jeffrey L. Viken, United States District Judge for the District of South Dakota.

term of juvenile delinquent supervision. D.B. appeals, arguing that his federal juvenile delinquency proceedings should have been dismissed because he was not afforded a speedy trial as required by the Federal Juvenile Delinquency Act (FJDA), 18 U.S.C. § 5036, and that his sentence is unreasonable. We affirm.

I.

The events giving rise to this case occurred near Porcupine, South Dakota, on the Pine Ridge Indian Reservation. On the night of July 20, 2021, then-16-year-old D.B. and another juvenile, who was armed with a knife, forced their way into the residence shared by Chance Rowland and his mother Wanda. A violent scuffle ensued. Once inside, D.B. "pushed" Wanda "to the floor," allowing the other juvenile to attack Chance and stab him multiple times in the back and head. D.B. later admitted that at the time he entered the Rowlands' residence, he "knew an assault was going to take place."

A Juvenile Information was filed in the District of South Dakota charging D.B. with first-degree burglary, assault with a dangerous weapon, and assault resulting in serious bodily injury.[2] See 18 U.S.C. § 5032 (providing that juvenile delinquency proceedings in federal court "shall proceed by information"). D.B. was subsequently arrested and arraigned in federal court on July 30. He was ordered detained until an August 2 detention hearing. Following that hearing, the magistrate judge ordered that D.B. remain in custody pending trial. The district court scheduled D.B.'s trial for August 31. However, after D.B.'s counsel filed a motion to suppress on August 16, the district court entered the following order: "Based on the interests

_____

[2]D.B. was charged in federal court pursuant to the Major Crimes Act, 18 U.S.C. § 1153, which authorizes "exclusive" federal jurisdiction over certain felony offenses committed by "[a]ny Indian . . . against the person or property of another Indian or other person . . . within the Indian country." He was also charged as a juvenile under the FJDA, which provides various procedural safeguards to juveniles who are alleged to have committed a "violation of a law of the United States" prior to turning 18. 18 U.S.C. § 5031; see id. § 5032.

of justice and 18 U.S.C. § 5036, the deadlines and court trial are canceled pending resolution of [the] Motion to Suppress."

On September 3, D.B.'s counsel filed a motion asking the district court "to consider releasing" D.B. "on pretrial release to a third party custodian."  A hearing was held on September 16, and the magistrate judge ordered that D.B. be released that day to live with his mother, subject to several release conditions.  By that point, D.B. had been in federal custody for 49 days.

D.B.'s counsel later moved to dismiss D.B.'s case on the ground that D.B. had not been tried within 30 days of being detained by federal authorities, as required by the FJDA.  See 18 U.S.C. § 5036.  But before the district court addressed the motion to dismiss, D.B. entered into a written plea agreement, pursuant to which he agreed to plead guilty to first-degree burglary.  In exchange, the United States agreed to dismiss the two remaining counts and to recommend that the district court sentence D.B. to probation.  D.B.'s plea agreement expressly provided that he "agree[d] to waive any rights to a speedy trial under either the United States Constitution or the Speedy Trial Act."  He also "waive[d] all defenses and his right to appeal any non-jurisdictional issues."

A change-of-plea hearing was held on December 7.  At the hearing, D.B. confirmed that he had read his plea agreement and understood its terms.  D.B. acknowledged that the parties' recommendation that he be sentenced to probation was not binding on the district court.  And he acknowledged that, with limited exceptions, he was waiving his appeal rights.  The district court ultimately accepted D.B.'s guilty plea, found him to be a juvenile delinquent, and denied his still-pending motion to dismiss as moot.

D.B. was back in custody at the time of his change-of-plea hearing for having violated the conditions of his pretrial release.  D.B. was re-released that day subject to amended release conditions.  But he was arrested again less than two weeks later for violating his court-imposed curfew, and his bond was revoked on December 22.

On February 10, 2022, D.B. was transferred from detention to an adolescent care center to receive inpatient substance abuse treatment. He was returned to detention a few weeks later, however, after he assaulted another juvenile patient.

D.B. remained in custody until his disposition hearing on April 28, 2022.[3] At the hearing, the district court found that had D.B. been prosecuted as an adult, the applicable Guidelines range for his burglary offense would have been 30–37 months of imprisonment.[4] After noting D.B.'s multiple violations of his release conditions, the district court rejected the parties' joint request for a probationary sentence and sentenced D.B. to 12 months of official detention followed by 36 months of juvenile delinquent supervision.[5]

D.B. appeals, raising two issues. He first argues that his federal juvenile delinquency proceedings should have been dismissed under the FJDA's speedy trial provision. See 18 U.S.C. § 5036. In the alternative, he contends that the sentence imposed by the district court is unreasonable. We address each issue in turn.

---

[3]The FJDA provides that after a district court "finds a juvenile to be a juvenile delinquent," it must hold a "disposition hearing," during which the court "may suspend the findings of juvenile delinquency, place [the juvenile defendant] on probation, or commit [the defendant] to official detention," the last of which "may include a term of juvenile delinquent supervision to follow." 18 U.S.C. § 5037(a). The "disposition hearing" is effectively a sentencing hearing.

[4]The Sentencing Guidelines "do not apply to a defendant sentenced under the [FJDA]." United States Sentencing Guidelines § 1B1.12 (2021). But "the maximum of the guideline range . . . applicable to an otherwise similarly situated adult defendant" can, in some circumstances, set the maximum term of official detention that can be imposed on a juvenile delinquent under the FJDA. 18 U.S.C. § 5037(c)(1)(B).

[5]The district court ordered that D.B. be credited with 166 days of time served toward his 12-month sentence of official detention.

## II.

The FJDA governs the treatment of juveniles who are charged in federal court with violating federal criminal laws. See 18 U.S.C. § 5032 (setting forth procedures for trying "[a] juvenile alleged to have committed an act of juvenile delinquency"); id. § 5031 (defining "juvenile delinquency" as "the violation of a law of the United States committed by a person prior to his eighteenth birthday which would have been a crime if committed by an adult"). The Act "creates a separate system of criminal justice for juveniles to 'shield' them from the ordinary criminal justice system and to provide them with 'protective treatment not available to adults accused of the same crimes.'" Jonah R. v. Carmona, 446 F.3d 1000, 1010 (9th Cir. 2006) (cleaned up) (quoting United States v. Doe, 53 F.3d 1081, 1083 (9th Cir. 1995)). Among the safeguards provided by the FJDA is the requirement that juvenile defendants in federal custody be afforded a speedy trial. See 18 U.S.C. § 5036; see also United States v. Sealed Juv. 1, 192 F.3d 488, 491–92 (5th Cir. 1999) ("The administration of juvenile justice in a[n] expeditious manner is a paramount interest under the [FJDA's] speedy trial provision.").

The FJDA's speedy trial provision provides as follows:

> If an alleged delinquent who is in detention pending trial is not brought to trial within thirty days from the date upon which such detention was begun, the information shall be dismissed on motion of the alleged delinquent or at the direction of the court, unless the Attorney General shows that additional delay was caused by the juvenile or his counsel, or consented to by the juvenile and his counsel, or would be in the interest of justice in the particular case. Delays attributable solely to court calendar congestion may not be considered in the interest of justice. Except in extraordinary circumstances, an information dismissed under this section may not be reinstituted.

18 U.S.C. § 5036.

The speedy trial clock begins to run when a juvenile defendant is first detained by federal authorities on juvenile delinquency charges.  See United States v. Juv. Male, 595 F.3d 885, 895 (9th Cir. 2010); United States v. David A., 436 F.3d 1201, 1206 (10th Cir. 2006).  That clock "continues to run, with certain specified exceptions, until the [juvenile] 'is brought to trial.'"  United States v. Female Juv., A.F.S., 377 F.3d 27, 34 (1st Cir. 2004) (quoting 18 U.S.C. § 5036)).  And absent "extraordinary circumstances," failure to comply with the 30-day trial deadline requires the dismissal of the juvenile's charges with prejudice.  18 U.S.C. § 5036.

Here, the parties do not dispute that D.B.'s juvenile delinquency proceedings were subject to the FJDA's speedy trial provision.  The record indicates that D.B. was first detained by federal authorities following his arraignment on July 30, 2021, and he remained in federal custody until September 16—49 days later.  He was not tried during that time.  Accordingly, D.B. argues that his speedy trial rights under the FJDA were violated and that the district court should have dismissed his case.  See id. (providing that a juvenile information "shall be dismissed on motion of the alleged delinquent" if a juvenile defendant is not brought to trial within 30 days of being detained).

We need not resolve whether D.B.'s speedy trial rights under the FJDA were violated because D.B. waived his right to appeal that issue as part of his plea agreement.  "As a general rule, a defendant is allowed to waive appellate rights."[6]

---

[6]We recognize that our cases addressing the enforceability of appeal waivers in plea agreements have involved adult offenders rather than juveniles.  Yet the FJDA expressly contemplates that juvenile defendants may enter guilty pleas.  See 18 U.S.C. § 5032 ("Once a juvenile has *entered a plea of guilty . . .* subsequent criminal prosecution or juvenile proceedings based upon such alleged act of delinquency shall be barred." (emphasis added)); see also United States v. Juv. Male E.S., No. 98-1735, 1998 WL 750582, at *1 (8th Cir. Oct. 28, 1998) (involving a juvenile defendant charged under the FJDA who ultimately entered a conditional guilty plea).  In addition, the Federal Rules of Criminal Procedure authorize adult defendants to enter into plea agreements, see Fed. R. Crim. P. 11(c); those Rules can also apply to juvenile defendants, so long as they are not "inconsistent with" statutes

United States v. Griffin, 668 F.3d 987, 990 (8th Cir. 2012) (quoting United States v. Andis, 333 F.3d 886, 889 (8th Cir. 2003) (en banc)).  When reviewing an appeal waiver, "we must confirm that the appeal" at issue "falls within the scope of the waiver and that both the waiver and plea agreement were entered into knowingly and voluntarily."  Andis, 333 F.3d at 889–90.  "Even when these conditions are met, however, we will not enforce a waiver where to do so would result in a miscarriage of justice."  Id. at 890.

D.B.'s plea agreement provides in relevant part that "[t]he Defendant hereby waives all defenses and his right to appeal any non-jurisdictional issues."  D.B. does not argue, nor does the record indicate, that his appeal waiver was not knowing and voluntary.  D.B. instead maintains that whether his speedy trial rights were violated is a "jurisdictional issue" not covered by the terms of his appeal waiver.  Yet it has long been settled that "[t]he issue of the right to a speedy trial is *non-jurisdictional* in nature."  Becker v. Nebraska, 435 F.2d 157, 157 (8th Cir. 1970) (per curiam) (emphasis added); see United States v. Seay, 620 F.3d 919, 921–22 (8th Cir. 2010).  D.B.'s speedy trial challenge thus "falls within the plain language" of his appeal waiver.  United States v. Guice, 925 F.3d 990, 992 (8th Cir. 2019); see Griffin, 668 F.3d at 989–90 (concluding that a defendant's appeal "based on alleged violations of the Speedy Trial Act" fell within the scope of a general appeal waiver providing that the defendant had waived "all rights to appeal all non-jurisdictional issues").

D.B. also argues that enforcing his appeal waiver here would result in a miscarriage of justice.  We disagree.  The "miscarriage of justice" exception "is a narrow one," Andis, 333 F.3d at 891, and ordinarily applies to prevent an appeal

---

governing juvenile delinquency proceedings, see Fed. R. Crim. P. 1(a)(5)(D); and the FJDA does not mention plea agreements, let alone bar them.  We have "acknowledged the general permissibility" of including appeal waivers in plea agreements.  Andis, 333 F.3d at 889.  Thus, we see no reason why the rules that govern such appeal waivers, see id. at 889–92, should not also apply to those entered into by juvenile defendants, so long as those rules are not otherwise "inconsistent with" the juvenile delinquency statute at issue.

waiver from barring an appeal of "an illegal sentence, a sentence in violation of the terms of an agreement, [or] a claim asserting ineffective assistance of counsel," Griffin, 668 F.3d at 990. D.B. does not assert that his sentence is unlawful or that his counsel was ineffective. His sentence likewise did not violate the terms of his plea agreement. Although the district court declined to adopt the parties' joint recommendation for a sentence of probation, the agreement cautioned that this recommendation was not binding on the district court. And that warning was expressly reiterated to D.B. during his change-of-plea hearing.

Because D.B.'s speedy trial challenge falls within the express terms of his valid appeal waiver, we will enforce the waiver and dismiss his appeal as to that issue.

## III.

D.B. alternatively argues that the sentence imposed by the district court was "arbitrary and capricious, unreasonable, and greater than necessary to achieve the goals of sentencing," principally because the district court sentenced him to 12 months of official detention despite the parties jointly recommending a probationary sentence.[7]

"We have jurisdiction to review a sentence pronounced under the FJDA to determine whether it was 'imposed in violation of law' or is 'plainly unreasonable.'" United States v. M.R.M., 513 F.3d 866, 868 (8th Cir. 2008) (quoting 18 U.S.C. § 3742(a)(1), (4)). D.B. does not argue that his sentence was imposed in violation of the FJDA or otherwise contrary to law. Consequently, we can vacate his sentence here only if it is "plainly unreasonable."

---

[7]The United States does not assert that D.B.'s appeal of his sentence is foreclosed by his appeal waiver.

We have explained that a district court "enjoys 'broad discretion' when sentencing juvenile offenders under the FJDA—indeed, broader discretion than when sentencing an adult." Id. (citation omitted). This is so because the Sentencing Guidelines, "even in their advisory capacity, do not apply to juveniles." Id.; see USSG § 1B1.12. Nor does the FJDA provision governing juvenile dispositions, 18 U.S.C. § 5037(c), incorporate the sentencing factors that apply to adult offenders, see 18 U.S.C. § 3553(a). M.R.M., 513 F.3d at 868. Accordingly, while we have "found reference to some of the § 3553(a) factors useful in determining whether a district court permissibly considered certain evidence as relevant in a juvenile proceeding," we have not said that a district court "must balance all of the § 3553(a) factors in making a juvenile disposition." Id.; see United States v. D.A.L.D., 469 F.3d 727, 730 (8th Cir. 2006) (affirming a juvenile disposition where the district court "cited only the [§] 3553(a) factors it deemed relevant"). Our focus is on whether the district court stated its reasons for imposing a given sentence and "created an adequate record to allow us to conduct a reasonableness review." D.A.L.D., 469 F.3d at 729–30.

The district court satisfied these requirements here. During D.B.'s disposition hearing, the court expressed concern about D.B.'s multiple violations of his pretrial release conditions, including his assaultive behavior. These violations, according to the district court, signaled that D.B. had yet to demonstrate a "willingness or ability to follow the law and the rules." It explained that a term of official detention would help D.B. "learn the consequences" of his behavior and give him an opportunity to distance himself "from the problems that [he] found [him]self in by not being able to say no, by getting in a place where people pressure[d] [him] to do the wrong things." The district court then imposed a 12-month term of official detention, significantly lower than the maximum 37-month term authorized by the FJDA. See 18 U.S.C. § 5037(c)(1)(B). And it observed that a post-detention term of juvenile delinquent supervision would help provide D.B. with the "resources, the support, and the programs and lessons that [he] need[ed] to learn to go forward in life without [him] getting in trouble." Given this adequate record and "the broad discretion afforded the district courts in the disposition of juvenile adjudications," M.R.M., 513

F.3d at 873, we conclude that the sentence imposed by the district court here was not plainly unreasonable.

## IV.

For the reasons explained above, we dismiss D.B.'s appeal as to his speedy trial issue and affirm the judgment of the district court.

_____