**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**October 7, 2025**

**Christopher M. Wolpert**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

————————————————————

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

JOHN DOE,

    Defendant - Appellant.

No. 25-9902

————————————————————

Before **PHILLIPS**, **MURPHY**, and **EID**, Circuit Judges.

————————————————————

**MURPHY**, Circuit Judge.

————————————————————

## I.    INTRODUCTION

John Doe, a Native American juvenile, admitted to, among other charges, kidnapping a minor female victim on tribal land for the purposes of physically assaulting her. *See* 18 U.S.C. §§ 5032, 1201(a)(2), 1153. After the district court entered a judgment of delinquent[1] as to the charge, this court decided the "holds"

---

[1] Judgment of delinquent against a juvenile is comparable to a judgment of conviction of an adult. *See infra* Part II.A.

element of kidnapping[2] contains a temporal requirement[3] which the government must satisfy with evidence demonstrating the victim was subject to an "appreciable period of detention (i.e. holding) beyond that necessary to commit any other offense." *United States v. Murphy*, 100 F.4th 1184, 1202 (10th Cir. 2024).

On appeal, Doe challenges the judgment of delinquent, arguing the district court plainly erred in accepting his admission. He asserts his admission was not knowing or voluntary because he was not made aware of the temporal limitation set forth in *Murphy*.

Juvenile delinquency proceedings must "measure up to the essentials of due process and fair treatment." *In re Gault*, 387 U.S. 1, 30 (1967). Doe's admission complies with due process only to the extent he received "real notice of the true nature of the charge against him." *Bousley v. United States*, 523 U.S. 614, 618 (1998) (quotation omitted). In most cases, the district court may provide notice of the charges by reciting the elements of the offense, but, at minimum, the district court must ensure awareness of the "essential elements" of the offense to which the

---

[2] Section 1201(a)(2) criminalizes kidnapping in "the territorial jurisdiction of the United States" when the kidnapper "holds" the victim "for ransom or reward or otherwise."

[3] The exact words used by *United States v. Murphy* were that the holds element of kidnapping contains a "temporal limitation," referring to its narrowing effect on the scope of liability under § 1201. 100 F.4th 1184, 1196 (10th Cir. 2024). Because the temporal limitation establishes an evidentiary requirement for the government, however, this opinion uses interchangeably the phrases "temporal limitation" and "temporal requirement."

juvenile admits. *United States v. Carillo*, 860 F.3d 1293, 1302 (10th Cir. 2017) (citing Fed. R. Crim. P. 11(b)(1)(G)).

*Murphy* did not clearly or obviously hold that the temporal limitation is an essential element of kidnapping. *See United States v. Starks*, 34 F.4th 1142, 1157 (10th Cir. 2022) ("An error is plain if it is so clear or obvious that it could not be subject to any reasonable dispute. In turn, to be clear or obvious, the error must be contrary to well-settled law." (quotations and citation omitted)). Nor does Doe otherwise identify well-settled law necessitating notice beyond that provided by the district court. *See id.* Thus, exercising jurisdiction pursuant to 28 U.S.C. § 1291, this court **affirms** the district court's judgment of delinquent.

## II.    BACKGROUND

### A. Statutory Background

Pursuant to the Juvenile Delinquency Act, 18 U.S.C. § 5031 *et seq.*, federal prosecutors pursue charges against juveniles[4] as "delinquency proceedings, not criminal prosecutions." U.S. Dep't of Just., Just. Manual § 9-8.002 (2024); *see United States v. Brian N.*, 900 F.2d 218, 220 (10th Cir. 1990) ("[P]rosecution [of a

---

[4] The Juvenile Delinquency Act, 18 U.S.C. § 5031 defines a juvenile as

[A] person who has not attained his eighteenth birthday, or for the purpose of proceedings and disposition under this chapter for an alleged act of juvenile delinquency, a person who has not attained his twenty-first birthday, and "juvenile delinquency" is the violation of a law of the United States committed by a person prior to his eighteenth birthday which would have been a crime if committed by an adult or a violation by such a person of section [18 U.S.C. § 922(x)].

3

juvenile] results in an adjudication of status—not a criminal conviction."). Charges are initiated by filing under seal 1) a juvenile information which alleges the individual has committed an act of delinquency, along with an affidavit of factual allegations and 2) a certification detailing the grounds for federal jurisdiction. U.S. Dep't of Just., Just. Manual § 9-8.003. Instead of pleading guilty or not guilty, juveniles admit or deny charges. *Id.* If any charges are denied, the district court holds a delinquency hearing in order to make a determination of delinquency. *Id.* Upon an admission or finding of delinquency, the district court holds a disposition hearing, which is analogous to a sentencing hearing. *Id.* (citing 18 U.S.C. § 5037). At the disposition hearing, the district court may "suspend the findings of juvenile delinquency, place [the juvenile] on probation, or commit [them] to official detention, which may include a term of juvenile delinquent supervision to follow detention." 18 U.S.C. § 5037(a).

### B. Procedural Background

John Doe is a juvenile and an enrolled member of the Eastern Shoshone Tribe. The government brought a six-count juvenile information against him, certifying federal jurisdiction under 18 U.S.C. §§ 5032, 1153. The information charged Doe with the following:

- Count One: Aggravated sexual abuse against Minor Victim 1 in violation of 18 U.S.C §§ 5032, 2241(a), 2246(2), 1153

- Count Two: Aggravated sexual abuse against Minor Victim 2 in violation of 18 U.S.C §§ 5032, 2241(a), 2246(2), 1153

4

- Count Three: Kidnapping Minor Victim 1 for the purposes of beating up and sexually assaulting Minor Victim 1 in violation of 18 U.S.C. §§ 5032, 1201(a)(2), 1153

- Count Four: Kidnapping Minor Victim 2 for the purposes of beating up and sexually assaulting Minor Victim 2 in violation of 18 U.S.C. §§ 5032, 1201(a)(2), 1153

- Count Five: Assault with dangerous weapon against Minor Victim 1 in violation of 18 U.S.C. §§ 5032, 113(a)(3), 1153

- Count Six: Assault with Dangerous Weapon against Minor Victim 2 in violation of 18 U.S.C. §§ 5032, 113(a)(3), 1153

An admission hearing was held after Doe notified the district court of his intent to admit to the charges set forth in Counts Three, Five, and Six. The district court engaged in an admission colloquy with Doe, first asking whether he had had an opportunity to review the juvenile delinquency information with his counsel. Once Doe replied yes, the district court read directly from the information. As for Count Three, the district court stated:

> [Doe], an Indian, . . . who had not at the time [of the alleged delinquent conduct] reached his eighteenth birthday, committed an act of juvenile delinquency, to wit: [Doe] did unlawfully seize, confine, kidnap, and hold [Minor Victim 1] for the purpose of beating up and sexually assaulting [Minor Victim 1].
>
> This is alleged to be in violation of Title 18 United States Code Sections 5032, 1201(a)(2), and 1153.
>
> This is a crime that carries a potential maximum penalty of detention up to the age of 21 and/or probation up until the age of 21. And any sentence could be followed by supervision by probation up until the age of 26, the violation of which could result in additional incarceration.

5

ROA Vol. III at WYD 8.[5] The district court then explained the rights which would be waived by his admission and the process by which he may be committed to detention at a disposition hearing. After being satisfied Doe was admitting to the charges voluntarily and of his own free will, the district court allowed him to enter his admission. At that point, however, Doe, through his counsel, signaled his intent to admit to conduct different than that with which he was charged under Count Three.[6] Rather than admitting to kidnapping for the purpose of beating up and sexually assaulting Minor Victim 1, Doe sought to admit to the charge of kidnapping Minor Victim 1 for "the purposes of beating [up Minor Victim 1] and basically [holding Minor Victim 1] so he could get away." ROA Vol. III at WYD 19. The government did not oppose the scope of Doe's admission and the court allowed him to proceed. After so admitting, Doe, with the assistance of his counsel, provided the following factual basis to support his admission:

During the night in question, Doe and more than ten other minors gathered in a trailer[7] for a party involving alcohol and drugs. Later in the night, Doe got into a

---

[5] The district court repeated this process for Counts Five and Six, but neither are relevant on appeal.

[6] He expressed no such intent for Counts Five or Six.

[7] The trailer was located in Ethete, Wyoming, which is within the boundaries of the Wind River Indian Reservation. *See* 18 U.S.C. §§ 1151 (defining tribal land), 1153 (establishing federal jurisdiction for certain criminal offenses committed within tribal land).

fight with some of the other minors at the party and was kicked out of the trailer. Doe found his way to a nearby bridge and fell unconscious until waking up the following morning. He headed back to the trailer to rest. Initially, he did not find anyone else in the trailer and fell asleep. He was later awoken by noise from inside the trailer and found Minor Victims 1 and 2 in the backroom. They demanded that Doe leave the trailer, but he instead headed into the kitchen. Then, a discussion between the three minors quickly escalated into a full brawl, involving objects being used as weapons. After a beating from Doe, Minor Victim 1 fled into a closet in the backroom, leaving only Minor Victim 2 with Doe. Doe continued to attack Minor Victim 2, but thereafter went into the backroom to look for Minor Victim 1. Doe kicked and struck Minor Victim 1 with a blunt object as she remained inside the closet. Doe then came back to the living room to see if Minor Victim 2 was still there. When he did not find her, he returned again to Minor Victim 1, who told him the police were coming. He returned to the living room to check for police, but having found none, he returned, incensed, to the backroom to punch, kick, and assault Minor Victim 1 with a blunt object. He left the trailer afterwards, telling Minor Victim 1 "[s]tay in [the closet]. Stay in there. When I leave don't come out." ROA Vol. III at WYD 30.

---

The trailer had multiple rooms: the main door opened up to the living room area. To the immediate left of the entrance was a hallway which led to a backroom. The backroom had a large closet. To the right of the main entrance was the kitchen.

7

Finding Doe had provided sufficient factual basis to establish the elements of the acts of delinquency to which he was admitting, the district court conditionally accepted his admissions as to all three Counts.

Following the admission hearing, the district court held a delinquency hearing from which it determined Doe was delinquent as to Count One, but not as to Counts Two or Four. Thereafter, the district court convened a disposition hearing, committing Doe to detention for a term lasting until June 15, 2026—approximately one month after his eighteenth birthday—and juvenile delinquent supervision until he turned twenty-one years old. On April 24, 2024, a judgment of delinquent was entered against Doe on Counts One, Three, Five, and Six.

On May 7, 2024, this court issued its decision in *Murphy*, 100 F.4th 1184. *Murphy* addressed an "unsettled question in this circuit: whether the statutory requirement of 'holding' in [18 U.S.C. § 1201] contains a temporal limitation." *Id.* at 1196. Answering in the affirmative, the court held "the government must offer evidence showing that the defendant held the victim for an appreciable period of time[,] . . . more than coterminous with the time necessary to carry out any related offense." *Id.* Doe timely appealed the judgment of delinquent as to Count Three, arguing, based on *Murphy*, that his admission was not voluntary because he was not made aware of the nature of the charge brought against him.

## III.    DISCUSSION

Because Doe challenges the validity of his admission for the first time on appeal, the plain-error standard applies. *United States v. Chatwin*, 60 F.4th 604, 606

8

(10th Cir. 2023). He must show "(1) error that is (2) plain, (3) affects substantial rights, and (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.* A plain error is one which is "obvious" or "clear under current law." *United States v. Olano*, 507 U.S. 725, 734 (1993); *United States v. Salas*, 889 F.3d 681, 686-87 (10th Cir. 2018) (assessing plain error based on the law at the time of the appeal). The standard is applied "less rigidly when reviewing a potential constitutional error, such as accepting a plea that is not knowing and intelligent." *United States v. Weeks*, 653 F.3d 1188, 1198 (10th Cir. 2011) (quotation omitted).

Doe argues his admission was not knowing or voluntary because he was not made aware of the temporal requirement identified in *Murphy*. He first contends *Murphy*'s temporal limitation is an essential element of kidnapping. Thus, he claims, the district court plainly erred in accepting his admission without ensuring he understood that essential element. Next, Doe argues in the alternative that even if the temporal requirement is not an essential element, the mere recitation of the elements was insufficient in this case because *Murphy* limited the scope of kidnapping after his admission. He compares the circumstances of his admission to that of the guilty plea in *Bousley*, maintaining he was not provided "real notice of the true nature of the charge against him." 523 U.S. at 618 (quotation omitted).

### A. Required Notice at an Admission Hearing

The purpose of a juvenile delinquency proceeding is to determine the youth's status as a delinquent. *United States v. Duboise*, 604 F.2d 648, 650 (10th Cir. 1979). Because its "main purpose" is to "remove juveniles from the criminal justice

9

system," a delinquency proceeding is considered "a civil rather than a criminal prosecution." *Id.* While juvenile hearings are not required to "conform with all the requirements of a criminal trial," they "must measure up to the essentials of due process and fair treatment." *In re Gault*, 387 U.S. at 30 (quotation omitted).

A juvenile may admit to delinquency charges as a criminal defendant may plead guilty. *See United States v. A.R.*, 81 F.4th 13, 19 (1st Cir. 2023); *United States v. D.B.*, 61 F.4th 608, 610-11 (8th Cir. 2023). "A plea of guilty is constitutionally valid only to the extent it is voluntary and intelligent." *Bousley*, 523 U.S. at 618 (quotations omitted); *see United States v. Avila*, 733 F.3d 1258, 1261 (10th Cir. 2013) (holding the Due Process Clause requires a plea to be "voluntary and intelligent"). A guilty plea cannot be "voluntary in the sense that it constituted an intelligent admission" of the offense, "unless the defendant received real notice of the true nature of the charge against him." *Henderson v. Morgan*, 426 U.S. 637, 645 (1976) (quotation omitted).

"[T]he issue of the voluntariness of an admission of [delinquency] is within the ambit of constitutional protections which must be accorded to juveniles." *Clay v. Dir., Juv. Div., Dep't of Corr.*, 631 F.2d 516, 519 (7th Cir. 1980). "Due process of law requires" the notice of charges provided during a juvenile delinquent hearing to be "of the sort . . . which would be deemed constitutionally adequate in a civil or criminal proceeding." *In re Gault*, 387 U.S. at 33; *see In re Winship*, 397 U.S. 358, 368 (1970) (identifying "notice of charges" as a "constitutional safeguard").

10

Federal Rule 11 of Criminal Procedure is "meant to ensure that a guilty plea is knowing and voluntary, by laying out the steps a trial judge must take before accepting such a plea." *United States v. Vonn*, 535 U.S. 55, 58 (2002); *see United States v. Dominguez*, 998 F.3d 1094, 1105 (10th Cir. 2021). Rule 11 may be applied to juvenile proceedings to the extent that it is not inconsistent with the statute governing juvenile delinquency proceedings. Fed. R. Crim. P. 1(a)(5)(D); *see United States v. Gordon K.*, 257 F.3d 1158, 1160-61 (10th Cir. 2001) (interpreting the scope of Rule 54(b), the language of which was later incorporated into Rule 1(a)); *see also D.B.*, 61 F.4th at 612 n.6 (applying Rule 11 to juvenile proceedings). Doe identifies no inconsistences between Rule 11 and the Juvenile Delinquent Act which would prevent the application of the Rule to this case.[8]

Pursuant to Rule 11(b)(1)(G), "[b]efore the [district] court accepts a plea of guilty . . . the court must inform the defendant of, and determine that the defendant understands, . . . the nature of each charge to which the defendant is pleading." "In most cases, to comply with the dictates of Rule 11(b)(1)(G), a district court must recite the elements of the offense." *Carillo*, 860 F.3d at 1302. "At a minimum,

---

[8] Doe does not claim an outright violation of Federal Rule 11 of Criminal Procedure but instead asserts a violation of his due process rights. Although it is theoretically possible compliance with Federal Rule 11 does not guarantee the satisfaction of due process requirements, *see Padilla v. Kentucky*, 559 U.S. 356, 391 n.1 (2010) (Scalia, J., dissenting) (positing the "colloquy . . . required by Federal Rule of Criminal Procedure 11(b) . . . *approximates* the due process requirements for a valid plea" (emphasis added)), Doe provides no reason to look beyond Rule 11 to determine the constitutionality of his admission.

Rule 11(b)(1)(G) requires that a district court ensure the defendant understands the 'essential' elements of the offense to which he pleads guilty." *Id.* (quoting *Bousley*, 523 U.S. at 618-19).[9]

### B. Holding of *United States v. Murphy*

Doe argues his admission was not knowing or voluntary because he was not notified of *Murphy*'s temporal requirement, which he asserts is an essential element of kidnapping. In order to establish an involuntary admission under this theory, he must overcome "the high hurdle of the plain error test." *Weeks*, 653 F.3d at 1199. To do so, he must clearly or obviously 1) show *Murphy*'s temporal requirement was a critical element of the charge of kidnapping; 2) overcome the presumption his attorney explained this element to him prior to his admission; and 3) demonstrate he did not receive notice of this element from any other source prior to his admission to the charge. *Id.*

---

[9] The Supreme Court indicated there are certain essential elements which are so critical that the notice of said element is required to ensure a voluntary guilty plea. *See Henderson v. Morgan*, 426 U.S. 637, 647 n.18 (1976) (identifying intent as a critical element of second-degree murder); *see also id.* at 654 n.2 (Rehnquist, J., dissenting) (questioning why intent, as opposed to any other element, would be considered critical). This court applied the holding of *Henderson* to assess the elements of second-degree murder under Oklahoma law. *See Hicks v. Franklin*, 546 F.3d 1279, 1284-85 (10th Cir. 2008) (concluding the "depraved mind" element was a critical element of the offense).

The defendant in *Murphy* challenged, inter alia, the sufficiency of the evidence after a jury convicted him of kidnapping.[10] *See* 100 F.4th at 1192. The *Murphy* Court first identified the elements of kidnapping:

> (a) Whoever unlawfully seizes confines, inveigles, decoys, kidnaps, abducts, or carries away and *holds* for ransom or reward or otherwise any person, except in the case of a minor by the parent thereof, when—
>
> . . .
>
> > (2) any such act against the person is done within the special maritime and territorial jurisdiction of the United States.

*Id.* at 1196 (quoting 18 U.S.C. § 1201). It then framed the issue raised on appeal: "This case calls upon [the court] to decide an unsettled question in this circuit: whether the statutory requirement of 'hold[ing]' in § 1201 contains a temporal limitation." *Id.* (noting the court previously had no reason to "definitively address" the issue). Relying on *Chatwin v. United States*, 326 U.S. 455 (1946), alongside precedent from this and other circuits, *Murphy* determined the scope of § 1201 requires the government to establish an "appreciable period of detention (i.e., holding) beyond that necessary to commit any other offense." *Murphy*, 100 F.4th at 1202; *see id.* at 1197-1200 (analyzing, among other circuit cases, *Gov't of V.I. v. Berry*, 604 F.2d 221 (3d Cir. 1979), and *United States v. Gabaldon*, 389 F.3d 1090, 1094 (10th Cir. 2004)). *Murphy* concluded the conviction must be reversed because

---

[10] Although not relevant to this appeal, the defendant was also convicted of second-degree murder. *Murphy*, 100 F.4th at 1192. Alongside his sufficiency challenge, he raised two additional issues on appeal based on the statute of limitations and the Fifth Amendment. *See id*.

13

the defendant did not hold the victim for an appreciable period beyond the time to commit the related offense of murder, and no reasonable jury could find otherwise. 100 F.4th at 1204.

*Murphy* applied "judicial gloss" on holds, which is a requisite element of kidnapping. *See United States v. Muskett*, 970 F.3d 1233, 1242 (10th Cir. 2020) (quoting *United States v. Lanier*, 520 U.S. 259, 266 (1997), for the proposition that through the construction of criminal statutes courts give meaning and clarity to otherwise ambiguous language). Addressing a sufficiency challenge, it clarified the scope of § 1201, as well as the nature of evidence necessary to sustain a conviction pursuant thereto. *Murphy*, 100 F.4th at 1195-96, 1202; *see United States v. Harper*, 118 F.4th 1288, 1301 (10th Cir. 2024) (identifying the need to update pattern jury instructions to reflect the government's evidentiary burden post-*Murphy*). *Murphy*, however, did not clearly identify the temporal requirement as an element, let alone a critical or essential element, of the offense. The type of notice required by due process at an admission colloquy implicates the juvenile's understanding of the elements of criminal conduct. *See Carillo*, 860 F.3d at 1302. Although the district court did not ensure Doe's awareness of the temporal requirement, *Murphy* does not establish the obviousness of the district court's error, assuming any exists at all. Doe's first argument therefore fails to identify a plain error. *See United States v. Knight*, 659 F.3d 1285, 1293-94 (10th Cir. 2011) (ending plain error analysis after

determining the defendant had not satisfied second and third prongs of the plain error standard).[11]

### C. Arguments based on *Bousley v. United States*

In the alternative, Doe argues that merely stating the elements of the offense of kidnapping was insufficient to ensure a knowing and voluntary admission. He likens the circumstances of his delinquency admission to that of the guilty plea examined in *Bousley*, 523 U.S. 614.

Petitioner Kenneth Bousley pleaded guilty to a violation of 18 U.S.C. § 924(c)(1) after being advised "by the trial judge, by his own lawyer, and by the prosecutor that mere possession of a firearm would support a conviction under § 924(c)." *Bousley*, 523 U.S. at 626 (Stevens, J., concurring). Thereafter, however, the Supreme Court held the government "must show that the defendant actively employed the firearm during and in relation to the predicate crime" in order to "sustain a conviction under the 'use' prong of § 924(c)(1)." *Bailey v. United States*, 516 U.S. 137, 150 (1995). *Bailey* introduced "a more stringent standard" than was used by the district court to assess and accept Bousley's guilty plea. *Bousley v. Brooks*, 97 F.3d 284, 287 (8th Cir. 1996), *rev'd sub nom.*, *Bousley v. United States*,

---

[11] Doe's involuntary admission claim fails at the first step of the *Weeks* test because he has not shown it is well-settled *Murphy*'s temporal requirement is an essential element of his kidnapping charge. Thus, it is unnecessary to move on to *Weeks*'s second and third requirements. Nevertheless, it is worth noting Doe also cannot demonstrate a plain error at those steps for reasons set out below in rejecting Doe's reliance of *Bousley*. *See infra* Part III.C.

523 U.S. 614. Bousley challenged the constitutional validity of his plea, arguing it could not have been knowing and intelligent because he was "misinformed . . . as to the elements of a § 924(c)(1) offense." *Bousley*, 523 U.S. at 618. The Supreme Court agreed, concluding "if the record reveal[ed] that neither he, nor his counsel, nor the court correctly understood the essential elements of the crime with which he was charged," the guilty plea would be "constitutionally invalid." *Id.* at 618-19.

According to Doe, *Bousley* establishes a guilty plea is not knowing or voluntary despite the defendant's awareness of the elements if subsequent decisions impose new limitations or requirements on those elements. *Bousley*, however, states a guilty plea may be intelligent even if "later judicial decisions indicate that at the time of [the] plea, [the defendant] 'did not correctly assess every relevant factor entering into his decision.'" *Id.* at 619 (quoting *Brady v. United States*, 397 U.S. 742, 757 (1970)). Doe does not identify a case from this circuit or the Supreme Court in support of his reading of *Bousley*. *See United States v. Ruiz-Gea*, 340 F.3d 1181, 1187 (10th Cir. 2003) ("In general, for an error to be [plain], either the Supreme Court or this court must have addressed the issue.").[12]

Moreover, the comparison to *Bousley* itself is unpersuasive. Doe does not make clear 1) he was affirmatively misinformed of the nature of his kidnapping

---

[12] Indeed, the Fifth Circuit arrived at a conclusion contrary to Doe's position. *See United States v. Nyandoro*, No. 23-10579, 2025 WL 2205980, at *5 (5th Cir. Aug. 4, 2025) ("[A] voluntary plea of guilty intelligently made in the light of then-applicable law does not become vulnerable because later judicial decisions indicate that the plea rested on a faulty premise.").

16

offense; or 2) that he, his counsel, and the district court misunderstood the essential elements of kidnapping. *See Bousley*, 523 U.S. at 618.

First, *Murphy* resolved "an unsettled question in this circuit" rather than overruling any existing statutory interpretations. *Compare Murphy*, 100 F.4th at 1196 *and Bailey*, 516 U.S. at 142 (observing the circuit split surrounding interpretation of the term "use" in § 924(c)). Because there existed no contrary, binding precedent, Doe was not affirmatively misled into believing a kidnapping offense did not require evidence showing that he held the victim for an appreciable period of time. *See Bousley*, 523 U.S. at 626 (Stevens, J., concurring) (noting the petitioner had "received critically incorrect legal advice" and explaining a "guilty plea based on such misinformation is constitutionally invalid"). In a filing in the district court, the government defined the "hold" element of kidnapping by citing *Chatwin*, the Supreme Court case that guided *Murphy*'s analysis. The transcript from the admissions hearing is devoid of any indication of inaccurate advice regarding the evidentiary requirement of kidnapping.

Second, when explaining the scope of Doe's admission, his counsel signaled Doe would admit to kidnapping "for the purposes of beating [up Minor Victim 1] and basically keeping her in [the closet] so he could get away." ROA Vol. III at WYD19. Counsel emphasized a second time that the benefit to Doe flowing from the kidnapping was that he would be able to "continue to beat [Minor Victim 1] up and to keep her in that location so he could get away." *Id.* When providing the factual basis to support his admission, Doe confessed that, after repeatedly assaulting Minor

Victim 1, he instructed her to stay in the closet as he exited the trailer.[13] The admission colloquy therefore indicates at least some cognizance on the part of Doe and his counsel of the government's burden to establish Doe held the victim beyond the time needed to commit a related offense. *See Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005) ("[T]he constitutional prerequisites of a valid plea may be satisfied where the record accurately reflects that the nature of the charge and the elements of the crime were explained to the defendant by his own, competent counsel.").

Doe maintains he was unaware of the temporal requirement of kidnapping because *Murphy* had not been decided at the time of his admission. The crux of *Murphy's* holding, however, was not novel because "at the time of [his admission], the Federal Reporters were replete with cases" assessing the temporal requirement of kidnapping charges. *Bousley*, 523 U.S. at 622-23; *see Murphy*, 100 F.4th at 1197-1202 (identifying and analyzing existing precedent). Doe even acknowledges one such case, *United States v. Jackson*, 24 F.4th 1308 (9th Cir. 2022), but insists he was not aware of the precise contours of *Murphy*, noting, in particular, his ignorance of the government's burden to establish a holding lasting longer than a brief, non-appreciable moment. Such an argument erroneously demands awareness of the technical requirements to sustain a conviction, as opposed to knowledge of the

---

[13] In addition, Doe also admitted there were two breaks in his assault of Minor Victim 1, during both of which Minor Victim 1 appears to have remained in the closet: when he 1) left the backroom to search for Minor Victim 2, and 2) went into the living room to check for police.

18

substance of the charge. *United States v. Trujillo*, 960 F.3d 1196, 1202 (10th Cir. 2020). The comparison to *Bousley* does not invoke well-settled law nor reveal an obvious error committed by the district court. It therefore fails to satisfy the plain error standard.

## IV.    CONCLUSION

The district court did not plainly err by accepting Doe's admission of delinquency. The judgment of the district court is **AFFIRMED**.

25-9902, *United States v. Doe*
**EID**, J., dissenting.

John Doe pleaded delinquent to kidnapping a female minor victim and assaulting her with a deadly weapon.  During his plea, Doe expressed that he believed he had "no defense" to these charges.  R. Vol. I at 46.  But after Doe entered his plea, we decided *United States v. Murphy*, where we held that a conviction for kidnapping under 18 U.S.C. § 1201 requires the defendant to have "held" the victim for an appreciable period of time, beyond the time necessary to carry out any related offense. 100 F.4th 1184, 1199 (10th Cir. 2024).  On appeal, Doe argues that the district court plainly and reversibly erred by accepting his delinquent plea because, during the plea colloquy, it failed to inform him of the temporal limitation on the "holds" element of kidnapping established in *Murphy*.  Doe concedes that he did not raise this issue at the district court, and so we review for plain error.

The majority concludes that Doe failed to demonstrate that the district court plainly erred because "*Murphy* did not clearly or obviously hold that the temporal limitation is an essential element of kidnapping."  Maj. Op. at 3.  I disagree.  In my view, *Murphy* imposed a substantive, temporal limitation on the scope of the crime of kidnapping.  And by imposing a substantive limitation on the "holds" element, *Murphy* effectively changed "the true nature" of the crime of kidnapping—that is, it narrowed the scope of an "essential element[] of the offense."  *Bousley v. United States*, 523 U.S. 614, 618–19 (1998).  Thus, the district court's failure to inform Doe of the temporal limitation on the "holds" element of kidnapping established in *Murphy* constitutes plain error.  This

is because Doe has demonstrated a reasonable probability that had he known of that limitation, he would not have pleaded delinquent, such that the district court's error affected his substantial rights. I respectfully dissent.

A defendant commits the crime of kidnapping under 18 U.S.C. § 1201 when he "unlawfully seizes, confines, inveigles, decoys, kidnaps, abducts, or carries away and *holds* for ransom or reward or otherwise any person" while in the territorial jurisdiction of the United States, including Indian Country. *Murphy*, 100 F.4th at 1196 (emphasis in original) (quoting 18 U.S.C. § 1201). "[O]nce the jurisdictional requirements are met—here, that an Indian defendant committed the offense in Indian Country—the crime of kidnapping is complete 'upon the unlawful seizing and detention of the victim.'" *Id.* (quoting *United States v. Toledo*, 985 F.2d 1462, 1466 (10th Cir. 1993)). Therefore, "to sustain a kidnapping conviction under § 1201, the government must offer evidence showing that the defendant held the victim for an appreciable period of time." *Id.*

In *Murphy*, we "definitively address[ed] the meaning of 'holds' under § 1201" for the first time. *Id.* We noted there that the precise meaning and scope of the "holds" element matters especially in cases "where a defendant is charged with other crimes that can involve some form of holding, such as murder, sexual assault, or robbery." *Id.* That is, depending on what it means to "hold" another person in the context of kidnapping, a defendant who commits a *separate* crime that inherently involves a form of holding could also be guilty of kidnapping. *See id.* at 1197 (noting that, under certain broad interpretations of the "holds" element, "any act of holding—however incidental—

2

committed in connection with other criminal conduct could transform that other conduct into the distinct offense of kidnapping").

But *Murphy* ultimately rejected an overly broad interpretation of what it means to "hold" another person for purposes of kidnapping under § 1201. Specifically, we held that "to sustain a kidnapping conviction under § 1201, the government must offer evidence showing that the defendant held the victim for an appreciable period of time," which "must be *more than coterminous* with the time necessary to carry out any related offense." *Id.* at 1196 (emphasis added). In other words, *Murphy* decided that a defendant commits a kidnapping under § 1201 only if the "holding" occurs for "an appreciable temporal period . . . beyond that necessary to commit any other offense." *Id.* at 1199.[1]

I conclude that the district court plainly erred when it failed to inform Doe of the temporal limitation on the "holds" element of kidnapping established in *Murphy*. I discuss each prong of the plain-error framework in turn.

---

[1] Notably, our interpretation of the "holds" element in *Murphy* relied on a prior Supreme Court decision, *Chatwin v. United States*, which held that "[t]he act of holding a kidnapped person for a proscribed purpose necessarily implies an unlawful physical or mental restraint *for an appreciable period* against the person's will and with a willful intent so to confine the victim." 362 U.S. 455, 460 (1946) (emphasis added). As we noted in *Murphy*, the Court in *Chatwin* "did not define what amount of time constituted 'an appreciable period,' leaving that question to be resolved by lower courts." *Murphy*, 100 F.4th at 1197 (citing *Chatwin*, 362 U.S. at 460).

Additionally, although our decision in *Murphy* rejected "[a] literal reading" of § 1201, we nevertheless noted that our interpretation of the statute "does not embellish or contravene the statute's plain terms," nor overly "expand" the scope of liability under it. *Id.* at 1199, 1201–02.

3

The first two prongs of our plain-error framework are met because the district court's acceptance of Doe's plea was (1) an error (2) that was plain. Without notice of the new temporal limitation established by *Murphy*, Doe could not have "understood the essential elements of the crime with which he was charged," rendering his plea constitutionally invalid. *Bousley*, 523 U.S. at 618. Here, the district court's error was plain because, in light of *Murphy*, the district court's failure to inform Doe of the temporal limitation was "contrary to well-settled law" in this Circuit as of the time of Doe's appeal. *United States v. Salas*, 889 F.3d 681, 687 (10th Cir. 2018).[2] As a result, *Murphy* substantively limited the circumstances under which a defendant, such as Doe, may be convicted of kidnapping.

Doe also successfully argues that the district court's plain error affected his substantial rights, satisfying the third prong of our plain-error framework. Doe has demonstrated that he "at least has reasonable grounds to contest th[e missing] element [of kidnapping] to a jury." *United States v. Perez-Perez*, 992 F.3d 970, 976 (10th Cir. 2021). He has therefore shown "a reasonable probability that, but for the error" in the district court's failure to inform him of *Murphy*'s temporal limitation on a kidnapping charge, he would not have entered a delinquent plea. *Id.* at 980.

---

[2] The fact that *Murphy* was decided after Doe entered his delinquent plea does not change the analysis here. As explained, plain error is measured against the state of the law "at the time of the appeal." *Salas*, 889 F.3d at 686–87 (quoting *United States v. Gonzalez-Huerta*, 403 F.3d 727, 732 (10th Cir. 2005)). Neither party disputes this point.

4

Finally, the parties do not dispute that if the first three prongs of plain error are satisfied, then the fourth is as well. *See* Aple. Br. at 26 ("If . . . this court were to find there was plain error, and it affected [Doe's] substantial rights, the government would concede the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." (internal quotations omitted)).[3]

For these reasons, I would hold that the district court plainly erred when it failed to inform Doe of the temporal limitation on the "holds" element of kidnapping established in *Murphy*. I respectfully dissent.

---

[3] The majority also holds that "Doe does not make clear 1) he was affirmatively misinformed of the nature of his kidnapping offense; or 2) that he, his counsel, and the district court misunderstood the essential elements of kidnapping." Maj. Op. at 17. I disagree. Since *Murphy*'s holding fundamentally changed an essential element of the kidnapping charge—contrary to the majority's assertion that "[t]he crux of *Murphy*'s holding . . . was not novel," Maj. Op. at 19—Doe could not have been aware of the true charge against him. Therefore, Doe's guilty plea was not voluntary or intelligent, since he did not "underst[and] the essential elements of the crime with which he was charged." *Bousley*, 523 U.S. at 618.